Docket No. 92837–Agenda 28–September 2002.

MAURICE LAND 
et al.
, Appellees, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO 
et al.
, Appellants.

Opinion filed November 21, 2002.

JUSTICE GARMAN delivered the opinion of the court:

The five plaintiffs are among 138 tenured public school teachers whose employment by the Board of Education of the City of Chicago (Board) was “honorably terminated” on January 22, 1999. Defendants are the Board itself, its individual members, and several officers of the Chicago public schools. After they were laid off from their teaching positions, plaintiffs filed a complaint in the circuit court of Cook County seeking a writ of 
mandamus
 ordering their reinstatement, a declaration that the Board’s layoff policy was invalid under sections 34–84 and 34–85 of the School Code (105 ILCS 5/34–84, 34–85 (West 1998)), and a permanent injunction restraining the Board from terminating their employment. The parties filed cross-motions for summary judgment and the circuit court granted defendants’ motion. The appellate court reversed and remanded. 325 Ill. App. 3d 294. We granted leave to appeal pursuant to Rule 315 (177 Ill. 2d R. 315) to determine whether the Board may delegate its authority to lay off employees. We reverse that portion of the judgment of the appellate court holding that the Board may not delegate its authority to make layoffs (325 Ill. App. 3d at 307), but affirm the order remanding this matter to the circuit court for further fact finding (325 Ill. App. 3d at 311).

BACKGROUND

Following the enactment of amendments to the School Code in 1995, the Board first adopted and later, in 1997, amended a “Policy Regarding Reassignment and Layoff of Regularly Certified and Appointed Teachers.” Section 1 of the policy permits reassignment or layoff of teachers, 
inter alia
, “[w]henever an attendance center is closed, there is a drop in enrollment, [or] the educational focus of the attendance center is changed.” Section 2A of the amended policy applies when such a change requires the removal of some but not all teachers, as in the present case:

“In Attendance Centers/Programs That Are Not Subject to Reconstitution. If changes in an attendance center or program require the removal of some but not all teachers, teachers with appropriate certifications will be selected for retention based on seniority. Provisionals, Day-to-Day substitutes, Cadre substitutes, FTBs and Probationary teachers within the attendance center or program will be removed before any regularly certified and appointed teachers with the appropriate certification is [
sic
] removed, in that order. Within each group, system-wide seniority shall be the determining factor.”

According to the affidavit of Xiomara C. Metcalfe, director of Chicago public schools bureau of recruitment and substitute services, department of human resources, each of the five plaintiffs “became subject to reassignment for one of the reasons within the scope of the applicable Board policy” and was “selected for reassignment” based on seniority, as required by the policy. Metcalfe’s statements are, for the most part, in the passive voice–the plaintiffs “were selected,” they “were notified,” and they “became” reassigned until, eventually, they “were honorably discharged.” She did not explain on what basis plaintiffs became subject to reassignment, who determined that layoffs would be necessary as a result of a change in an attendance center or program, or who made the selection based on seniority. According to Metcalfe, plaintiff Land’s layoff was in accordance with the 1995 version of the policy, which provided for laying off a reassigned teacher who did not obtain a permanent position within 20 months of reassignment. The other four plaintiffs were laid off in accordance with the 1997 amended policy, which provided for a layoff after 10 months if the teacher had not secured a permanent position.

The record contains copies of a form letter sent to all five plaintiffs on January 6, 1999, informing them that they would be laid off and honorably terminated as of January 22, 1999, in accordance with the policy. These letters were signed by one of the defendants, Carlos Ponce, the director of the department of human resources for the Chicago public schools. In addition, the affidavit of plaintiff Land states that he was informed of his impending termination by the principal of the school at which he taught.

Plaintiffs’ complaint claimed that the layoff policy violates those sections of the School Code that permit the removal of tenured teachers only for cause and only after notice and a hearing. See 105 ILCS 5/34–84, 34–85 (West 1998). In effect, the plaintiffs’ position was that the 1995 amendments to the School Code did not give the Board the authority to lay off tenured teachers. Even if the Board is empowered to lay off tenured teachers, they argued, that power cannot be delegated and, in particular, the power cannot be delegated to school principals. Because the Board did not expressly decide to terminate each of the plaintiffs, they asserted that their terminations were void. Plaintiffs also acknowledged that their removal was “accomplished by” the policy quoted above, but claimed that none of the triggering events or conditions had occurred and that their layoffs were, therefore, unauthorized.

After the circuit court denied the Board’s motion to dismiss, plaintiffs moved for summary judgment on the basis that each of these claims could be decided as a matter of law. The Board responded with its own summary judgment motion in which it argued that tenured teachers may be laid off; the policy does not exceed the authority granted to the Board by the legislature; and the record demonstrated that plaintiffs were laid off in accordance with the policy. After a hearing, the circuit court denied plaintiffs’ motion for summary judgment and granted defendants’ motion.

Plaintiffs appealed. The appellate court rejected plaintiffs’ argument that teachers are not subject to layoff, holding that the layoff provision (105 ILCS 5/34–18(31) (West 1998)), and the removal provision (105 ILCS 5/34–85 (West 1998)), are “entirely separate statutory provisions” that can both be given effect without conflict. 325 Ill. App. 3d at 304. The appellate court further found that the Board had the statutory authority to promulgate a layoff policy and that the policy is “clear and unambiguous.” 325 Ill. App. 3d at 305. Because plaintiffs failed to present any competent evidence to support their assertion that the Board did not follow its own policy, the appellate court found this claim waived. 325 Ill. App. 3d at 306.

The appellate court did address plaintiffs’ claim that the Board improperly delegated its layoff authority to individual school principals. After concluding that the legislature gave the Board exclusive authority to determine layoffs, and that the authority may not be delegated at all (325 Ill. App. 3d at 307), the appellate court determined that remand was necessary to resolve a disputed issue of material fact–who made the determination that these five plaintiffs would be laid off (325 Ill. App. 3d at 308).

ANALYSIS

In an appeal from the grant of summary judgment, review is 
de novo
. 
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 390 (1993). The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. 
Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d 511, 517 (1993). Summary judgment is proper where pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2000).

This case also presents questions of statutory interpretation, which are reviewed 
de novo
. 
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 503 (2000). In interpreting a statute, a court’s primary goal is to ascertain the intent of the legislature. 
Paris v. Feder
, 179 Ill. 2d 173, 177 (1997). “The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning.” 
Paris
, 179 Ill. 2d at 177. When the plain language of the statute is clear and unambiguous, the legislative intent that is discernable from this language must prevail, and no resort to other tools of statutory construction is necessary. 
Paris
, 179 Ill. 2d at 177.

The appellate court, in its effort to give effect to all of the relevant sections of the School Code, invoked the doctrine of 
in pari materia
. 325 Ill. App. 3d at 307. Under this doctrine of construction, two legislative acts that address the same subject are considered with reference to one another, so that they may be given harmonious effect. See 
United Citizens of Chicago & Illinois v. Coalition to Let the People Decide in 1989
, 125 Ill. 2d 332, 339 (1988). This court has previously held that sections of the same statute should also be considered 
in pari materia
, and that each section should be construed with every other part or section of the statute to produce a harmonious whole. 
Sulser v. Country Mutual Insurance Co.
, 147 Ill. 2d 548, 555 (1992). The doctrine is consistent with our acknowledgment that one of the fundamental principles of statutory construction is to view all of the provisions of a statute as a whole. 
Michigan Avenue National Bank
, 191 Ill. 2d at 504. Words and phrases should not be construed in isolation, but interpreted in light of other relevant portions of the statute so that, if possible, no term is rendered superfluous or meaningless. 
Michigan Avenue National Bank
, 191 Ill. 2d at 504; 
In re Marriage of Kates
, 198 Ill. 2d 156, 163 (2001). Further, we presume that the legislature, when it enacted the statute, did not intend absurdity, inconvenience, or injustice. 
Michigan Avenue National Bank
, 191 Ill. 2d at 504.

This dispute is governed by article 34 of the School Code, which applies to cities of over 500,000 inhabitants. 105 ILCS 5/34–1 
et seq
. (West 1998). The sections of article 34 that are relevant to the present case include section 34–8.1, which describes the powers and duties of school principals (105 ILCS 5/34–8.1 (West 1998)); section 34–18, which describes the powers of the Board (105 ILCS 5/34–18 (West 1998)); and sections 34–84 and 34–85, which govern the appointment and promotion of teachers and the removal of teachers for cause, respectively (105 ILCS 5/34–84, 34–85 (West 1998)).

Section 34–18 is entitled “Powers of the board.” Prior to the 1995 amendments, this section contained 29 enumerated powers as well as a “catch-all” provision authorizing the Board to exercise all other powers “requisite or proper for the maintenance and the development of a public school system, not inconsistent with the other provisions of this Article or provisions of this Code.” 105 ILCS 5/34–18 (West 1994). Layoffs were not mentioned in this section, but were addressed in section 34–84, which concerns the appointment and promotion of teachers. 105 ILCS 5/34–84 (West 1994). The 1995 amendments deleted the language regarding layoffs from section 34–84 and added several new enumerated powers to section 34–18, including the power, “except as otherwise provided by this Article,” to:

“promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees, including, but not be limited to, criteria for such layoffs, reductions in force or recall rights of such employees and the weight to be given to any particular criterion. Such criteria shall take into account factors including, but not be limited to, qualifications, certifications, experience, performance ratings or evaluations, and any other factors relating to an employee’s job performance[.]” 105 ILCS 5/34–18(31) (West 1998).

The powers and duties of school principals are set out in section 34–8.1 of the School Code (105 ILCS 5/34–8.1 (West 1998)). The responsibilities of a principal include the duty to “direct, supervise, evaluate, and suspend *** [or] discipline” teachers, but the “right to employ, discharge, and layoff shall be vested solely with the board.” The principal, however, “may make recommendations to the board regarding the employment, discharge, or layoff of any individual.” 105 ILCS 5/34–8.1 (West 1998).

Section 34–84 governs the appointment and promotion of teachers. Following completion of a probationary period, “appointments of teachers shall become permanent, subject to removal for cause in the manner provided by Section 34–85.” 105 ILCS 5/34–84 (West 1998). Under section 34–85, no permanent teacher shall be removed “except for cause.” Written notice of charges and specifications and a hearing, with the right of review, are provided for. 105 ILCS 5/34–85 (West 1998).

A. Board’s Authority to Lay Off Tenured Teachers

Before the circuit court and the appellate court, the plaintiffs claimed that because the Board’s layoff power is limited by the “except as otherwise provided” language of section 34–18, and because section 34–85 provides “otherwise,” their layoffs are entirely unlawful and void. The appellate court formulated the issue as “whether the legislature intended sections 34–84 and 34–85 to be exceptions to the layoff provision provided in 34–18(31).” 325 Ill. App. 3d at 303.

We agree with the appellate court’s conclusion that these two separate statutory provisions may both be given effect without violating the plain language of the statute or ignoring legislative intent. The Board had the power to lay off tenured teachers prior to the 1995 amendments. Indeed, it has long been established that among the unenumerated powers of the Board was the authority “to lay off employees in good faith for lack of work or purposes of economy.” 
Perlin v. Board of Education of the City of Chicago
, 86 Ill. App. 3d 108, 112 (1980) (citing 
Kennedy v. City of Joliet
, 380 Ill. 15 (1942), 
Thomas v. City of Chicago
, 273 Ill. 479 (1916),  and 
Fitzsimmons v. O’Neill
, 214 Ill. 494 (1905)). Prior to 1995, limits on that power were set out in section 34–84, which permitted the Board, under certain circumstances, to designate teachers as “reserve teachers” (see 105 ILCS 5/34–1.1 (West 1994)) and to honorably terminate such teachers from service after 25 months (105 ILCS 5/34–84 (West 1994)). The 1995 amendments did not eliminate or reduce this power. Instead, by deleting the layoff provision from section 34–84 and adding section 34–18(31), the legislature gave the Board the authority to formulate and implement its own rules and procedures regarding layoffs rather than binding the Board to a legislatively mandated procedure. We, therefore, affirm that portion of the appellate court judgment holding that sections 34–84 and 34–85 do not exempt tenured teachers from layoff.

B. Board’s Ability to Delegate the Authority to Make Layoffs

In the circuit court and the appellate court, plaintiffs also argued that while section 34–18(31) permits the Board to promulgate a procedure for determining layoffs, it does not permit the Board to delegate to others the responsibility for implementing that procedure. Based primarily on the provision that the “right to employ, discharge, and layoff shall be vested solely with the board,” found in section 34–8.1 (105 ILCS 5/34–8.1 (West 1998)), the appellate court agreed. 325 Ill. App. 3d at 306-08. Before this court, the parties now agree that the Board may not only promulgate a procedure for determining layoffs, but may also delegate the authority for implementing that procedure. Nevertheless, we may not reverse this portion of the appellate court’s judgment merely because the parties are in agreement that the appellate court erred. We must examine the issue ourselves.

The appellate court based its conclusion that the authority to make layoffs may not be delegated on “the statute’s unequivocal language.” 325 Ill. App. 3d at 307. In an earlier case, however, a different panel of the same appellate district found this language ambiguous. See 
Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board
, 309 Ill. App. 3d 88, 100 (1999) (finding section 34–8.1 ambiguous and interpreting it to mean that the Board “may delegate a nonexclusive power, such as the power to suspend,” but may not delegate its “absolute authority”).

A statute is ambiguous if it is susceptible to two equally reasonable and conflicting interpretations. 
People v. Whitney
, 188 Ill. 2d 91, 98 (1999). Only if the statutory language is ambiguous may we consider extrinsic aids for construction, such as legislative history, to determine legislative intent. In the absence of ambiguity, we must rely on the plain and ordinary meaning of the words chosen by the legislature. 
Whitney
, 188 Ill. 2d at 97-98. Further, where the language of a statute is clear and unambiguous, a court must give it effect as written, without reading into it exceptions, limitations, or conditions that the legislature did not express. 
Davis v. Toshiba Machine Co., America
, 186 Ill. 2d 181, 184-85 (1999).

We agree with the appellate court that section 34–8.1 is unambiguous and that resort to extrinsic aids of construction is not appropriate. We do, however, conclude that the appellate court read more into this provision than its plain language justifies. Our conclusion necessarily overrules the 
Chicago School Reform
 court’s finding of ambiguity.

The Board argues that section 34–18(31), by empowering the Board to “promulgate rules establishing procedures governing *** layoff[s]” (105 ILCS 5/34–18(31) (West 1998)), expresses a legislative intent that such rules are “obviously for the use of [the board’s] administrators.” In keeping with this reading of section 34–18(31), the policy states in its introductory sentence: “The Chief Executive Officer recommends adoption of the following policy for use by the Board and administrators.”

To “promulgate” is to “declare or announce publicly; to proclaim,” or to “put (a law or decree) into force or effect.” Black’s Law Dictionary 1231 (7th ed. 1999). There is nothing inherent in the act of promulgating rules or procedures that suggests someone other than the one announcing the rules will implement them. The Board could promulgate rules and procedures either as a means of instructing its agents or employees to whom the task will be delegated, or as a means of giving notice to affected parties of the procedures and criteria that it intends to apply. By enacting this provision authorizing the Board to promulgate rules, the legislature simply did not speak to the matter of delegating authority for layoffs. We conclude that section 34–18(31), standing alone, does not reveal either a legislative intent that the Board may delegate responsibility for carrying out the layoff policy or the opposite intent.

The appellate court then looked to the language of section 34–8.1: “The right to employ, discharge, and layoff shall be vested solely with the board.” 105 ILCS 5/34–8.1 (West 1998). Relying on dictionary definitions of the words “vested” and “right,” the appellate court concluded that the Board alone is allowed to make layoffs and, thus, cannot implement a policy delegating this authority. These words, however, need not be read so narrowly. A right is a power or privilege to which one is entitled  (325 Ill. App. 3d at 307; see also Black’s Law Dictionary 1323 (7th ed. 1999) (defining “right” as a “power, privilege, or immunity secured to a person by law”)), but such entitlement does not preclude the delegation of that power or privilege to another. The appellate court also looked to an earlier edition of Black’s Law Dictionary for the definition of “vested” and found “ ‘giving the rights of absolute ownership.’ ” 325 Ill. App. 3d at 307, quoting Black’s Law Dictionary 1563 (6th ed. 1990). Black’s, however, defines a “vested right” as a “right that so completely and definitely belongs to a person that it cannot be impaired or taken away 
without the person’s consent
.” (Emphasis added.) Black’s Law Dictionary 1324 (7th ed. 1999). One could not delegate a right or privilege to another unless one was “vested” with the right in the first place. For example, a stockholder possesses the exclusive right to vote his or her shares, but may delegate that right by granting a proxy to another. A property owner is vested with the right to exclude others from his property by virtue of ownership in fee simple, but may delegate that right to another by granting a lease. Giving the words in this sentence their plain and ordinary meaning, we can conclude only that the Board has the exclusive power to employ, discharge, or lay off employees. Section 34–8.1, however, does not address the ability of the Board to delegate any of this responsibility, with one exception.

The language at issue (“The right to employ, discharge, and layoff shall be vested solely with the board”) is contained in section 34–8.1, which is the provision that defines the powers and duties of principals. This sentence is immediately followed by: “The principal shall fill positions by appointment as provided in this Section and may make recommendations to the board regarding the employment, discharge, or layoff of any individual.” 105 ILCS 5/34–8.1 (West 1998). Thus, plaintiffs assert, the “vested solely” language is intended to describe the role of a principal vis-a-vis the Board. As between the principal and the Board, the Board has the sole authority to lay off employees; the principal’s role is entirely advisory.

Reading section 34–8.1 as whole, it is clear that the Board is prohibited from delegating the responsibility for making layoffs to principals. The 17 paragraphs of section 34–8.1 not only define the powers and duties of principals, but also describe in detail the relationship between principals and the Board. For example, the engineer in charge is “[u]nder the direction of and subject to the authority of” the principal, while the Board “shall” establish a system of semiannual evaluations by which the principal will evaluate the performance of the engineer in charge. Similar provisions apply to the principal’s supervision of the food service manager. Each principal must hold a valid administrative certificate, but the Board may impose additional qualifications. With regard to layoffs, the Board has the sole right to make them, but the principal “may make recommendations to the board.” 105 ILCS 5/34–8.1 (West 1996). This section is clear and unambiguous–the determinations of whether layoffs are necessary and who will be laid off may not be made by principals. The role of principals is purely advisory.

This reading is consistent with the language of section 34–18(31), which authorizes the Board to establish criteria for layoffs that include, but are not limited to, “qualifications, certifications, experience, performance ratings or evaluations, and any other factors relating to an employee’s job performance.” 105 ILCS 5/34–18(31) (West 1996). The Board chose to rely entirely on seniority as the basis for determining who would be laid off. If it were to adopt a policy under which job performance is a consideration, the input of the principals would be quite relevant. Under such a policy, however, the principal could only recommend, not decide, who should be laid off.

Our reading of section 34–8.1 is also supported by its title, “Principals.” “When the legislature enacts an official title or heading to accompany a statutory provision, that title or heading is considered only as a ‘short-hand reference to the general subject matter involved’ in that statutory section, and ‘cannot limit the plain meaning of the text.’ ” 
Michigan Avenue National Bank
, 191 Ill. 2d at 505-06, quoting 
Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.
, 331 U.S. 519, 528-29, 91 L. Ed. 1646, 1652, 67 S. Ct. 1387, 1391 (1947). Such official headings or titles are of use “ ‘only when they shed light on some ambiguous word or phrase’ ” within the text; they “ ‘cannot undo or limit that which the text makes plain.’ ” 
Michigan Avenue National Bank
, 191 Ill. 2d at 506, quoting 
Brotherhood of R.R. Trainmen
, 331 U.S. at 529, 91 L. Ed. at 1652, 67 S. Ct. at 1392.

In this case, we do not find the provision ambiguous so our consideration of the title or heading is not for the purpose of undoing or limiting the text. Rather, we find section 34–8.1 to be silent on the question of the Board’s ability to delegate layoff decisionmaking, other than with respect to principals. The title “Principals” is, however, consistent with our conclusion that section 34–8.1 deals with the powers and duties of principals, and the relationship of principals to the Board, but does not otherwise limit the powers of the Board provided for in section 34–18.

We conclude that section 34–8.1 is not intended to impose a limitation on the power of the Board to delegate its layoff authority. If that had been the intent of the legislature, this language would have been moved in 1995 when other language affecting layoffs was deleted from section 34–84 and added to section 34–18. The continued presence of these words in section 34–8.1 is a clear indication of legislative intent that this language is a limit only on the role of principals. Although we agree with plaintiffs that the plain language of section 34–8.1 prohibits delegation of the authority to make layoffs to principals, we must still decide whether the Board may delegate this authority to anyone other than a principal.

The Board offers five separate arguments in support of its claim that it may delegate layoff authority. First, when the legislature intends to prohibit delegation of the Board’s authority, it does so expressly, as in section 34–19 of the School Code. See 105 ILCS 5/34–19 (West 1998). Second, when the legislature intends for the Board to take action on a given matter, it makes that requirement explicit. See 105 ILCS 5/34–18 (West 1998) (various subsections provide that the Board “shall” carry out certain duties and “may” perform others); 105 ILCS 5/34–85 (West 1998) (providing that, after a hearing, the Board “shall make a decision as to whether the teacher or principal shall be dismissed”). Third, the case law has recognized that delegation of the Board’s powers is permissible. Fourth, legislative history demonstrates intent to permit delegation. And fifth, policy considerations weigh in favor of permitting delegation. We find the Board’s first argument dispositive and, therefore, need not address the remaining arguments.

The Board’s first argument is that an entirely separate section of the School Code authorizes the delegation of layoff authority. Section 34–19 is entitled “By-laws, rules and regulations; business transacted at regular meetings; voting; records” and provides, in pertinent part, that “[n]otwithstanding any other provision in this Article or in the School Code, the board may delegate to the general superintendent or to the attorney the authorities granted to the board in the School Code.” 105 ILCS 5/34–19 (West 1998). The delegation provision also requires that “appropriate oversight procedures” be established, and lists six nondelegable functions, none of which are relevant in this case.

“[C]ourts should not, under the guise of statutory construction, add requirements or impose limitations that are inconsistent with the plain meaning of the enactment.” 
Nottage v. Jeka
, 172 Ill. 2d 386, 392 (1996). The holding of the appellate court is in direct conflict with section 34–19, which expressly authorizes the Board to delegate all but six enumerated functions to either the general superintendent or the attorney.

In sum, we find no language in any applicable provision of the School Code that indicates the legislature’s intent to prohibit delegation of the authority to make layoffs to anyone other than principals, and we find express authorization of delegation to the general superintendent and attorney. We reverse that portion of the appellate court’s judgment holding that the Board is entirely prohibited from delegating its layoff authority. On the record before us, we need not determine whether the authority may be delegated to officers or administrators other than the general superintendent and attorney.

C. Necessity for Remand

Although summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic measure and should be granted only if the moving party’s right to judgment is clear and free from doubt. 
Travelers Insurance Co. v. Eljer Manufacturing, Inc.
, 197 Ill. 2d 278, 292 (2001). A motion for summary judgment does not ask the court to try a question of fact, but to determine if a question of material fact exists that would preclude the entry of judgment as a matter of law. 
Gilbert
, 156 Ill. 2d at 517. Thus, although the nonmoving party is not required to prove his case in response to a motion for summary judgment, he must present a factual basis that would arguably entitle him to judgment. 
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 256 (1996). “If the party moving for summary judgment supplies facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opponent cannot rest on his pleadings to create a genuine issue of material fact.” 
Harrison v. Harden County Community Unit School District No. 1
, 197 Ill. 2d 466, 470 (2001).

The appellate court found that summary judgment for the Board was improper and that remand would be necessary to determine who laid off the plaintiffs. 325 Ill. App. 3d at 308. Although the parties now agree that some delegation of layoff authority is permissible, they disagree on the need for remand. The Board argues that it promulgated a “self-executing” policy, properly delegated authority to carry out the policy, and laid off the plaintiffs in accordance with the policy. Therefore, the Board claims, no further fact finding is required. We disagree.

The record before the circuit court when it granted summary judgment in favor of the Board included the pleadings, the Board’s policy, the layoff notice letters signed by Ponce, the Metcalfe affidavit, and the Land affidavit in which he stated that his principal notified him of his impending layoff. We must view the record in the light most favorable to the nonmoving party. 735 ILCS 5/2–1005(c) (West 2000).

Section 34–18(31) authorizes the Board to promulgate “rules establishing procedures” for layoffs. 105 ILCS 5/34–18(31) (West 1998). A procedure is a “specific method or course of action.” Black’s Law Dictionary 1221 (7th ed. 1999). A policy states the “general principles by which a government is guided in its management of public affairs.” Black’s Law Dictionary 1178 (7th ed. 1999). Both the title and the content of the document promulgated by the Board reveal it to be a policy, not a procedure.

The policy specifies events that may trigger layoffs, but does not reveal who will determine whether a triggering event has occurred and whether, as a result of that event, layoffs are necessary. The policy adopts a strict rule of seniority as the basis for layoffs, thus removing all discretion at this stage, but does not identify the person or office responsible for making the seniority determination. The policy also contains a notice provision, but does not reveal who issues the layoff notice, or who decides when such notice will issue. In fact, almost the entire policy is written in the passive voice: a program “is closed”; an educational focus “is changed”; teachers “are selected” for layoff based on seniority; if unable to secure a permanent position, the teacher “shall be laid off” and “shall be notified” of the layoff at least 14 days in advance.

In sum, the Board’s bare assertion that it followed its own policy does not resolve the question of whether the layoff authority was delegated and, if so, to whom. Plaintiffs have produced evidence that the layoff notices were issued by the director of the department of human resources and that at least one school principal was aware of an impending layoff before written notice was given, but have not produced evidence that the layoff authority was delegated improperly. Such information, if it exists, is in the possession of the Board. Viewing the record in the light most favorable to the plaintiffs, summary judgment for the Board is inappropriate. We remand this matter to the circuit court for further fact finding to determine whether the Board properly delegated responsibility for making any or all of the determinations required by its policy and, if so, whether the party to whom authority was delegated acted in accordance with the policy.

Appellate court judgment affirmed

in part and reversed in part;

circuit court judgment reversed;

cause remanded.