CONNIE DEANNINE COOK, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF ELDORADO COMMUNITY UNIT SCHOOL DISTRICT No. 4, Defendant-Appellee.

Fifth District    No. 5—03—0572

Opinion filed September 16, 2004.—Motion to publish granted November 5, 2004.

Stacey A. Aschemann, of Schuchat, Cook & Werner, of Carterville, for appellant.

Keith A. May, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

In March 2003, the defendant, the Board of Education of Eldorado Community Unit School District No. 4 (School Board), informed the plaintiff, Connie Deannine Cook, that she was to be laid off from her position as a library aide. The plaintiff had previously worked as a

teacher's aide for four years. In May 2003, the plaintiff filed a complaint alleging that the School Board's failure to place her on seniority lists for both aide positions violated the educational support personnel layoff statute (105 ILCS 5/10—23.5 (West 2002)) and provisions of an agreement between the parties settling employment discrimination claims the plaintiff had previously filed against the School Board. She now appeals from an order dismissing her complaint for the failure to state a claim (735 ILCS 5/2—615(a) (West 2002)). We reverse and remand for further proceedings.

## I. BACKGROUND

In August 1997, the plaintiff began working in the Eldorado Community Unit School District as a teacher's aide. She worked continuously in that capacity until she suffered an on-the-job injury in August 2001. At that time, she went on leave for medical reasons. In February 2002, the School Board sent the plaintiff a letter informing her that it intended to terminate her employment with the district as a result of her lengthy leave of absence. In response, the plaintiff filed disability discrimination claims with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR).

On August 9, 2002, the plaintiff entered into a settlement agreement with the district. Pursuant to that agreement, the plaintiff was offered a position as a library aide in an elementary school for the 2002-03 school year. The agreement provided that the School Board would "assign [the plaintiff] to work in an aide position within her medical restrictions" for the 2003-04, 2004-05, and 2005-06 school years, so long as she was not affected by a reduction in force. The contract did not specify whether the district was to assign the plaintiff to a position as a teacher's aide, a position as a library aide, or any available position as a teacher's aide, library aide, playground aide, or lunchroom aide. In exchange for these promises of job assignments, the plaintiff gave up her right to pursue her discrimination claims before the EEOC and IDHR, as well as a pending claim before the Illinois Department of Labor.

In March 2003, the School Board announced a reduction in force. In laying off employees, school boards are required by statute to maintain lists showing the length of continuing service of educational support personnel such as library aides and teacher's aides. See 105 ILCS 5/10—23.5 (West 2002). These lists are used to determine both the order in which employees are laid off and the order in which they are recalled when positions become available thereafter. As a result of the March 2003 layoffs at the Eldorado school district, the plaintiff, as the least senior of the district's three library aides, was laid off, along

with the 10 least senior teacher's aides. The plaintiff was placed on the seniority list for library aides but not the list for teacher's aides. Her seniority was based on her August 1997 start date so that she was given credit for all of her years of service to the district, including the year she was out on medical leave. Only 2 of the 10 teacher's aides who were laid off and placed on the teacher's aide seniority list have more seniority than the plaintiff. The effect of this is that if a third teacher's aide position becomes available before a library aide position opens up, an employee with less seniority than the plaintiff will be recalled before the plaintiff.

The plaintiff, through counsel, sent a letter to the School Board and demanded that the teacher's aide and library aide seniority lists be combined because both job titles fall within the same category of position. See 105 ILCS 5/10—23.5 (West 2002) (mandating that when vacancies occur after a reduction in force, those positions are to be offered to qualified employees who were dismissed "from that *category* of position" (emphasis added)). Alternatively, she requested that she be placed on both recall lists. See 105 ILCS 5/10—23.5 (West 2002) (requiring school boards to maintain seniority lists "categorized by positions, showing the length of continuing service of *each full[-]time educational support personnel employee who is qualified to hold any such positions*" (emphasis added)). The School Board denied the plaintiff's request.

On May 23, 2003, the plaintiff filed the instant two-count complaint. In count I, she sought a writ of *mandamus* compelling the School Board to comply with the educational support personnel layoff statute (105 ILCS 5/10—23.5 (West 2002)), either by combining the seniority lists for all full-time aide positions or, alternatively, by placing her on the seniority lists for both positions. In count II, the plaintiff alleged that the School Board breached its settlement agreement with her by failing to give her the full benefit of her seniority. On June 30, 2003, the School Board filed a motion to dismiss pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 2002)). On September 3, 2003, the trial court granted the motion to dismiss. The court dismissed count I, finding that the plaintiff could not state a clear right to *mandamus* because the educational support personnel layoff statute gives school boards the discretion to define categories of positions. The court dismissed count II, finding that the settlement agreement did not explicitly require the School Board to place the plaintiff on the seniority list for teacher's aides. On September 16, 2003, the plaintiff filed the instant appeal.

## II. DISCUSSION

### A. Writ of *Mandamus*

Our resolution of the issues presented depends upon an interpretation of the educational support personnel layoff statute (105 ILCS 5/10—23.5 (West 2002)). Our review, therefore, is *de novo*. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421, 781 N.E.2d 249, 254 (2002). Our primary goal in statutory construction is to effectuate the intent of the legislature. The best evidence of legislative intent may be found in the words of the statute itself. *Land*, 202 Ill. 2d at 421, 781 N.E.2d at 254. Where a statute is unambiguous, its words must be given their plain and ordinary meaning without resort to other tools of statutory construction. *Land*, 202 Ill. 2d at 421-22, 781 N.E.2d at 254.

■ The statute at issue provides, in pertinent part:

"If an educational support personnel employee is removed or dismissed as a result of a decision of the school board to decrease the number of educational support personnel employees employed by the board or to discontinue some particular type of educational support service, written notice shall be mailed to the employee ***. The employee with the shorter length of continuing service with the district, *within the respective category of position*, shall be dismissed first ***. If the board has any vacancies for the following school term or within one calendar year from the beginning of the following school term, the positions thereby becoming available within a specific category of position shall be tendered to the employees so removed or dismissed *from that category of position*, so far as they are qualified to hold such positions." (Emphases added.) 105 ILCS 5/10—23.5 (West 2002).

■ The plaintiff argues that the statute requires the School Board to place her on a seniority list for every position that she is qualified to hold. She points to the requirement that each category's seniority list includes "each full[-]time educational support personnel employee who is qualified to hold any such positions." 105 ILCS 5/10—23.5 (West 2002). She argues that because educational support employees must necessarily be qualified to hold the positions they actually hold prior to a layoff, the quoted language would be superfluous if the statute did not require such employees to be placed on seniority lists for additional positions. This argument fails to distinguish between "positions" and "categories of positions." Employees are not necessarily qualified to hold every position in the same category as the position they hold when they are laid off. The statute, by its express terms, requires only that positions be offered to employees who were laid off *from the same category of positions*. Likewise, the statute only requires

that the order of dismissal be based on seniority *"within the respective category of position."* (Emphasis added.) 105 ILCS 5/10—23.5 (West 2002). Thus, the requirement that educational support employees be included in seniority lists for all the positions they are qualified to hold simply means that the School Board must include each employee in seniority lists for every position she is qualified to hold within the category of positions from which she was laid off—whether there is a single list for the entire category (as is the School Board's practice) or separate lists for each individual position (as some of the statutory language seems to anticipate).

■ The plaintiff also argues that the statute should be construed consistently with judicial interpretations of similar language in the teacher tenure law (105 ILCS 5/24—12 (West 2002)). Illinois courts have held that the purpose of the teacher tenure law was to provide tenured teachers with job security to ensure continued service by experienced teachers, thereby improving the quality of Illinois schools. *Birk v. Board of Education of Flora Community Unit School District No. 35*, 104 Ill. 2d 252, 257, 472 N.E.2d 407, 409 (1984); *McNely v. Board of Education of Community Unit School District No. 7*, 9 Ill. 2d 143, 147, 137 N.E.2d 63, 66 (1956). Thus, it is to be interpreted in such a way to avail tenured teachers of its full protections. *Birk*, 104 Ill. 2d at 257, 472 N.E.2d at 409. Consistent with this statutory purpose, courts have interpreted language nearly identical to that in the educational support personnel layoff statute to include an implicit requirement that employees be recalled in the order of their seniority and be laid off in the reverse order of their seniority. *Costello v. Governing Board of Lee County Special Education Ass'n*, 252 Ill. App. 3d 547, 551, 623 N.E.2d 966, 971 (1993). The School Board argues that the plaintiff's reliance on cases such as *Costello* is misplaced because the teacher tenure law expressly applies only to teachers.

We need not resolve this disparity in the parties' positions. We agree with the plaintiff that, as a general matter, cases interpreting the teacher tenure law may be applicable to the similar provisions in the educational support personnel layoff statute. See *Verdeyen v. Board of Education of Batavia Public School District No. 101*, 150 Ill. App. 3d 915, 925-27, 501 N.E.2d 937, 943-45 (1986) (looking to cases interpreting the teacher tenure law to decide a dispute relating to a school nurse's tenure under a different statute). There is, however, one key difference between the relevant language of the two statutes that renders the teacher tenure law cases inapposite to the issue before us—the teacher tenure law does not address categories of teaching positions. See 105 ILCS 5/24—12 (West 2002) ("[T]he teacher or teachers with the shorter length of continuing service with the district shall

be dismissed first ***. *** If the board has any vacancies ***, the positions *** shall be tendered to the teachers so removed or dismissed ***"). The only issue in the instant case is how the School Board must categorize the plaintiff for seniority purposes. Because the teacher tenure law, which covers a much narrower range of employees than the educational support personnel layoff statute, does not address categories of employees, the cases cited by the plaintiff do not aid us in our determination.

Because the statute is silent regarding how categories of educational support personnel are to be determined, we agree with the School Board that school boards have the discretion to make this determination as they see fit. We believe, however, that the plaintiff's petition and supporting documentation raise a genuine issue of material fact regarding how broadly the School Board defines the category of positions in which she worked. As noted, the School Board brought its motion to dismiss pursuant to both sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 2002)). In ruling on a motion to dismiss pursuant to section 2—615, courts are to take all well-pleaded facts as true. *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 162, 700 N.E.2d 1064, 1069 (1998). On appeal from an order granting a motion to dismiss pursuant to section 2—619, the issue is whether a genuine issue of material fact exists that would preclude a dismissal. *Lykowski*, 299 Ill. App. 3d at 164, 700 N.E.2d at 1070. Under either standard, the plaintiff's complaint should not have been dismissed.

The plaintiff specifically alleged in her complaint that teacher's aide and library aide positions are both a part of the same category of positions—that of "aides." Although we do not find the fact that both job titles contain the word "aide" meaningful, we find that the record contains evidence to support the contention that the two job titles are in fact treated as one category of position for all purposes other than layoff and recall. The plaintiff stated in her affidavit that the School Board regularly reassigned employees who worked as teacher's aides one year to work as library aides the next and vice versa. She also stated, however, that she worked continuously as a teacher's aide for four years until she was injured. As stated, the settlement agreement provides that the School Board would place the plaintiff in "an aide position" after the 2002-03 school year, which tends to support the plaintiff's allegation. The collective bargaining agreement between the plaintiff's union and the district appears to treat all full-time aides as one category of employee. The salary schedule contains only one classification, simply called "aides." We note that the collective bargaining agreement recognizes a separate category for part-time aides—which,

unlike the full-time aide category, is mirrored by the School Board's single seniority list for part-time teacher's aides, playground aides, and lunchroom aides. Finally, we note that there are strong similarities between the two types of full-time aide positions. The job description for the library aide position includes, in addition to clerical duties, teaching classes of children in the mornings (by reading to them) and monitoring children using the library. Although the record does not contain a description of the teacher's aide duties, we presume that the position likewise requires the aide to assist in teaching classes and to monitor children's behavior in the classroom.

While we agree that the statute gives school boards the discretion to define categories of positions, we do not think it gives them the discretion to define categories of positions differently for layoff and recall purposes than for other purposes. Either all full-time aides are one category of employee or they are not. If the district does treat aides as one category, the statute imposes a nondiscretionary duty on the School Board to place the plaintiff on seniority lists for all full-time aide positions, whether they are maintained as a single list or separate lists. Because the plaintiff has raised a genuine issue regarding how the district defines the category of positions, we must reverse the order dismissing count I of her complaint and remand for further findings.

## B. Breach of Contract

■ In count II of the plaintiff's complaint, she requested the court to declare that the School Board breached the parties' settlement agreement by refusing to place her on the seniority list for teacher's aides. She contends, as she did at the trial, that even if the educational support personnel layoff statute does not require the School Board to do so, the parties' agreement does. Although the contract does not expressly include a provision requiring the School Board to place the plaintiff on the teacher's aide seniority list, for the reasons which follow, we find that she has at least raised a genuine issue of material fact regarding whether such a duty is implicit in the Board's express promise to offer her "an aide position within her medical restrictions" in the following three school years.

Paragraph 3 of the settlement agreement provides that the agreement is contingent upon the plaintiff being selected for the library aide position at Eldorado Elementary School for the 2002-03 school year. The plaintiff was selected for the position, and the contingency is not at issue. What is significant, however, is that the agreement describes the plaintiff's assignment to the position as being *"for the 2002-2003 school year."* (Emphasis added.) With respect to the

plaintiff's job assignments after the 2002-03 school year, paragraph 3C of the agreement provides, in pertinent part, as follows:

"For the 2003-2004 through 2005-2006 school years, *so long as [the plaintiff] is not affected by a reduction in force* or otherwise terminated in accordance with the collective bargaining agreement, board policy, and State and Federal laws, *the District will assign [the plaintiff] to work in an aide position* within her medical restrictions, provided the medical restrictions do not preclude [the plaintiff] from performing the essential functions of her assigned duties with any reasonable accommodations required by the [Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.* (2000))] and [Illinois Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 2002))]." (Emphases added.)

We find that the language promising to assign the plaintiff to an aide position following the library aide assignment is ambiguous and that a resolution of the ambiguity is necessary to effectuate the intent of the parties in entering into the agreement. The plaintiff contends that the School Board "refused" to extend the library aide assignment beyond the 2002-03 school year, instead promising to place her in an available teacher's aide position the following year. She alleges that the only reason she was placed in the library aide position pursuant to the settlement agreement was that no teacher's aide positions were vacant. The School Board, however, alleges that the plaintiff was assigned to the library aide position because her medical restrictions prevented her from performing the essential functions of teacher's aide positions. Where contractual language is susceptible to more than one reasonable interpretation, it is ambiguous and courts may look beyond the express language of the contract to ascertain the parties' intentions. *Owens v. McDermott, Will & Emery,* 316 Ill. App. 3d 340, 348, 736 N.E.2d 145, 153 (2000). Here, the language obliging the School Board to assign the plaintiff "to work in an aide position" after the 2002-03 school year could be interpreted one of three ways: the language could mean that the School Board was required (1) to assign the plaintiff to another library aide position at that time, (2) to assign her to a teacher's aide position at that time, or (3) to assign her to any available full-time aide position. If the promise to place her after the 2002-03 school year was, as the plaintiff contends, a promise to place her as a teacher's aide, that promise would be rendered illusory if it did not include an implicit promise to place her on the seniority list to be recalled for such a position.

The School Board argues, however, that its promise to place the plaintiff in *any* position following the 2002-03 school year was limited by the phrase "so long as [the plaintiff] is not affected by a reduction

in force." We find that this language, too, is ambiguous. It might mean, as the School Board's argument seems to imply, that the promise to place her is contingent on there being no layoffs during her assignment as a library aide. It might, however, mean simply that the School Board does not promise to place her during those years if reductions in force cause the positions to which she would otherwise be assigned to be eliminated. The plaintiff gave up important rights in exchange for the School Board's promises. Thus, we think it is important to determine what the parties intended so that she gets the full benefit of that bargain. See *Smith v. Burkitt*, 342 Ill. App. 3d 365, 369-70, 795 N.E.2d 385, 389 (2003) (a court's primary objective in contract interpretation is to give effect to the parties' intentions when they entered into the contract). Because the plaintiff raised a genuine issue regarding whether the contract contains such an implicit obligation, we conclude that count II should not have been dismissed.

## III. CONCLUSION

We find that the plaintiff has raised genuine issues of material fact regarding both counts of her complaint. We therefore reverse the decision of the trial court dismissing this cause and remand for further proceedings consistent with this decision.

Reversed; cause remanded.

MAAG and HOPKINS, JJ., concur.