# Illinois Official Reports

## Appellate Court

---

### *Johnson v. Safeguard Construction Co.*, 2013 IL App (1st) 123616

---

| | |
|---|---|
| Appellate Court Caption | SCOTT JOHNSON, Plaintiff-Appellant, v. SAFEGUARD CONSTRUCTION COMPANY, INC., Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-3616 |
| Filed | December 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from plaintiff's complaint about being denied a substantial commission in his work as a representative of defendant corporation, which was in the business of restoring storm-damaged homes by sending out representatives like plaintiff to meet with homeowners, talk with insurance adjusters, and obtain contracts for restoration work to be done by subcontractors using products meeting the preferences of the homeowners, the trial court properly entered summary judgment for defendant corporation on the count of plaintiff's complaint alleging that defendant violated the Sales Representative Act, since defendant was not a purveyor of tangible goods, defendant was not a "principal" for purposes of the Act, and the Act did not apply. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-13695; the Hon. Raymond W. Mitchell, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Law Offices of Richard D. Grossman, of Chicago (Richard D. Grossman, of counsel), for appellant. |
| | |
| | Vedder Price P.C., of Chicago (Chad A. Schiefelbein, Joseph K. Mulherin, and Benjamin A. Hartsock, of counsel), for appellee. |
| | |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. |
| | Presiding Justice Connors and Justice Hoffman concurred in the judgment and opinion. |

**OPINION**

¶ 1  This appeal arises from the October 31, 2012 order entered by the circuit court of Cook County, which granted summary judgment on count I of a complaint in favor of defendant Safeguard Construction Company, Inc. (Safeguard), and denied summary judgment on count II in favor of plaintiff Scott Johnson (Johnson). Following Johnson's voluntary dismissal of the surviving count of the complaint, the circuit court entered a final order. On appeal, Johnson argues that the circuit court erred in granting summary judgment on count I of the complaint. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                     BACKGROUND

¶ 3  Safeguard is an Illinois corporation engaged in the business of insurance restoration by facilitating the repair of damaged homes. According to the deposition testimony of Kevin Schultz (Schultz), the owner of Safeguard, Safeguard dispatches independent sales representatives to storm-damaged areas for the purpose of interviewing homeowners about the damage to their homes, interfacing with insurance adjusters, and obtaining contracts from homeowners for the restoration of their damaged homes. Safeguard does not perform the actual repair work, but subcontracts the repair work to third parties, to whom Safeguard relays the homeowners' preferences for the use of specific products and brands of products in the repair process.

¶ 4  On March 15, 2011, Johnson entered into an agreement with Safeguard by which he became Safeguard's independent sales representative "for the sale of Safeguard products and services." Pursuant to paragraph 6(c)(ii) of the agreement, Safeguard agreed to indemnify and hold Johnson harmless against any and all liabilities "arising directly or indirectly from the manufacturing of any Safeguard product or any services provided by Safeguard." Paragraph 4 of the agreement provided that, in consideration for the services performed by Johnson, Safeguard agreed to pay Johnson a percentage of its net profits. Johnson's summarized duties and responsibilities were set forth in a document entitled "Field Representative (Next Steps)."

¶ 5    On July 22, 2011, Safeguard cancelled its agreement with Johnson, after he allegedly complained to Safeguard that it had deprived him of a substantial commission by "going around him" on the procurement of a roofing job involving a church in Bolingbrook, Illinois.

¶ 6    In a letter dated August 5, 2011, Safeguard conveyed to Johnson that his "outstanding earned commissions" would not be paid unless Johnson agreed to waive any and all claims arising out of their agreement, or arising out of Johnson's independent contractor relationship with Safeguard. Johnson refused to sign a proposed waiver of his rights.

¶ 7    On December 20, 2011, Johnson filed a two-count complaint against Safeguard, alleging that Safeguard violated the Sales Representative Act (820 ILCS 120/0.01 *et seq.* (West 2010)) (count I), and engaged in breach of contract (count II). Thereafter, the parties engaged in the discovery process.

¶ 8    On September 18, 2012, Safeguard filed a motion for summary judgment in which it argued that Safeguard was not subject to the Sales Representative Act and that it did not breach its agreement with Johnson.

¶ 9    On October 31, 2012, the circuit court entered an order granting Safeguard's motion for summary judgment as to the Sales Representative Act claim (count I), but denying the motion as to the breach of contract claim (count II). Thereafter, on November 6, 2012, Johnson filed a motion to voluntarily dismiss the surviving breach of contract claim (count II) of his complaint, pursuant to section 2-1009 of the Code of Civil Procedure (735 ILCS 5/2-1009 (West 2010)). On November 7, 2012, the circuit court entered an order granting Johnson's motion to voluntarily dismiss. The order further stated that it was a "final order" and that "final judgment is entered on count I."

¶ 10    On December 4, 2012, Johnson filed a notice of appeal.

¶ 11    ANALYSIS

¶ 12    The sole issue on appeal is whether the circuit court erred in granting summary judgment with respect to the Sales Representative Act claim (count I) of the complaint in favor of Safeguard, which we review *de novo*.[1] See *Collins v. St. Paul Mercury Insurance Co.*, 381 Ill. App. 3d 41, 45 (2008).

¶ 13    Johnson argues that the circuit court erred in granting summary judgment in favor of Safeguard. Specifically, he contends that Safeguard was subject to the Sales Representative Act because it was a "principal" within the meaning of the statute, and thus, the entry of summary judgment was erroneous.

¶ 14    Safeguard counters that the circuit court properly granted summary judgment on the Sales Representative Act claim (count I) of the complaint. Safeguard asserts that Johnson's argument that Safeguard was a "purveyor of tangible goods" was without factual support, and that his arguments also lacked legal support.

---

[1]Safeguard erroneously states that Johnson failed to include any reference to the appropriate standard of review, which was actually properly included on page 3 of Johnson's opening brief on appeal.

¶ 15    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). "In considering a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party." *Pielet v. Pielet*, 407 Ill. App. 3d 474, 490 (2010). "The purpose of summary judgment is not to try a question of fact, but to determine whether one exists" that would preclude the entry of judgment as a matter of law. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 421 (2002). "Thus, although the nonmoving party is not required to prove his case in response to a motion for summary judgment, he must present a factual basis that would arguably entitle him to judgment." *Id.* at 432.

¶ 16    Section 2 of the Sales Representative Act (the Act) provides in pertinent part that all "commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination." 820 ILCS 120/2 (West 2010). Section 1(3) of the Act defines "principal" as follows:

> " 'Principal' means a sole proprietorship, partnership, corporation or other business entity whether or not it has a permanent or fixed place of business in this State and which:
>
>> (A) Manufactures, produces, imports, or distributes a *product* for sale;
>>
>> (B) Contracts with a sales representative to solicit orders for the *product*; and
>>
>> (C) Compensates the sales representative, in whole or in part, by commission." (Emphases added.) 820 ILCS 120/1(3) (West 2010).

The plain language of the Act specifically refers to "products," which this court has held was evidence of the legislature's clear intent that the Act apply only to "purveyors of tangible goods, not services." *English Co. v. Northwest Envirocon, Inc*., 278 Ill. App. 3d 406, 415 (1996). In the case at bar, the parties dispute whether Safeguard was a "principal" within the meaning of the Act so as to subject Safeguard to the terms of the Act.

¶ 17    Johnson does not challenge the well-settled proposition that a company that exclusively provides "services" is not a "principal" under the Act. Rather, he argues that Safeguard, as a company that is a purveyor of both services and tangible goods, must be considered a "principal" for the purposes of the Act. In support of his contention that Safeguard was a purveyor of both tangible goods and services, Johnson directs this court's attention to the references made to "products and services" on Safeguard's website and in the parties' agreement.

¶ 18    Based on our review of the record, we find that the contents of Safeguard's website and the terms of the parties' agreement failed to raise a genuine issue as to whether Safeguard was a purveyor of tangible goods. According to Schultz's deposition testimony, Safeguard's website contained various descriptions of services and products, including specific brands of roofing, siding, window, and painting products by various manufacturers. Schultz testified that Safeguard did not have any agreements with the manufacturers of these brand-name products, but that the information about these products was posted on the website because Safeguard

- 4 -

believed them to be the best in the market. Schultz clarified that Safeguard did not perform the actual repair work, but subcontracted the repair work to third parties, to whom Safeguard relayed the homeowners' preferences as to what specific brands of products to use in the repairs. Schultz testified that Safeguard did not manufacture, produce, import, or distribute any products that were used by the subcontractors in repairing the homes. Rather, when questioned about the language in the March 15, 2011 agreement by which Johnson became Safeguard's independent sales representative "for the sale of Safeguard products and services," Schultz explained that the terms "products and services" were interchangeable as the services Safeguard provided to homeowners–the installation or replacement of roofing and siding systems, gutters, and windows. Schultz testified that, as an example, a homeowner who already owned 5,000 shingles could hire Safeguard to install the shingles on the home, but that a homeowner who wanted to install his own shingles would not be able to buy 5,000 shingles from Safeguard and would be better served by purchasing the shingles from Home Depot or Menard's. Schultz testified that, as an independent sales representative, Johnson was required to canvas storm-damaged neighborhoods to provide free inspections to homeowners, interface with insurance adjusters, and obtain contracts from homeowners for the restoration work. Johnson's summarized duties and responsibilities were set forth in a document entitled "Field Representative (Next Steps)," which we find did not involve the selling of specific brand-name products to homeowners. Indeed, Johnson's description of his work duties and responsibilities in his deposition testimony paralleled Schultz's description, and Johnson specifically testified that Safeguard was in the business of providing restoration work to homes. Although Johnson, as the nonmoving party, was not required to prove his case in response to Safeguard's motion for summary judgment, he must present a factual basis that would arguably entitle him to judgment. See *Land*, 202 Ill. 2d at 432. Based on our review of the record, we find that he has failed to do so. Thus, viewing the record in the light most favorable to Johnson, we find that Safeguard engaged exclusively in the sale of services and that no genuine issue was raised as to whether Safeguard was a purveyor of tangible goods.

¶ 19       Nonetheless, Johnson argues that any home repair work facilitated by Safeguard must involve tangible goods–such as paint, gutters, windows, shingles, drywall, and siding–that are necessary to replace the damaged parts of the home. Following this logic, he contends that Safeguard was a "principal" for the purposes of the Act because it "distributed" tangible goods along with the sale of home repair services. In support of this contention, Johnson cites an unreported federal district court case, *Nicor Energy v. Dillon*, No. 03 C 1169, 2004 WL 51234, at *1 (N.D. Ill. Jan. 7, 2004). We reject this contention.

¶ 20       In *Nicor Energy*, counterplaintiff Dillon was employed by counterdefendant Nicor Energy to market and sell natural gas and electricity services. *Id.* The district court found that Nicor Energy was a "principal" under the Act on the basis that the electricity and natural gas contracts that Dillon sold on behalf of Nicor Energy included agreements to sell specific quantities of natural gas and electricity to end users. *Id.* at *2. The *Nicor Energy* court further found these agreements to be "a combination of commodities and management services." *Id.* The court further reasoned that, in this "mixed product case," although the Act did not apply to

the management services, it applied to tangible goods–the commodities of natural gas and electricity–that were sold. *Id.*

¶ 21 First, we note that federal court decisions, other than United States Supreme Court decisions, are considered persuasive authority and not binding on this court. *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 835 (2004). Second, we find *Nicor Energy* to be factually distinguishable from the case at bar. The circuit court in the case at bar, in distinguishing *Nicor Energy*, noted that "the focus of the contracts at issue [in *Nicor Energy*] was on the product–the main purpose was to provide commodities to customers." We agree with the circuit court's assessment. Unlike *Nicor Energy*, in the instant case, the main purpose of the contracts that Johnson solicited from homeowners was to provide *repair services* to their damaged homes, and any tangible goods associated with the repair work were merely incidental to the services provided. Rather, we find *English Co.* to be instructive.

¶ 22 In *English Co.*, the defendant company entered into a sales representation agreement with the plaintiff to sell the defendant's "environmental assessment and documentation" to companies in northern Illinois and southern Wisconsin, for which the plaintiff was paid fixed commissions for each sale. *English Co.*, 278 Ill. App. 3d at 408. Upon termination of the parties' agreement, the defendant allegedly refused to pay the plaintiff on all earned commissions. *Id.* at 409. Thereafter, the plaintiff filed an action against the defendant under the Act. *Id.* The trial court then granted the defendant's motion for summary judgment, finding that the defendant only provided "services" rather than tangible goods and, thus, was not subject to the Act. *Id.* at 409-10. On appeal, the reviewing court held that the defendant was not a "principal" under the Act, finding that the Act only applied to purveyors of tangible goods, not services. *Id.* at 415. The court noted that, historically, the sale of services "is a much more personal transaction requiring a great deal more direct contact between the parties." *Id.* at 414. The court then made a distinction between contracts to provide services, pursuant to which employees must "go to the client's place of business," and contracts to provide products, pursuant to which a company can "simply ship the device to the client" without any need to visit the client's place of business. *Id.* Moreover, the court then noted that, even if a company sold tangible goods, it would not be considered a "principal" for the purposes of the Act where the company was not the originator of the product being sold but, rather, was "merely in the chain of distribution." *Id.* at 415.

¶ 23 Like *English Co.*, in the instant case, Safeguard was engaged in providing services of insurance restoration work by facilitating home repairs after certain losses. In order to satisfy the terms of the contracts with the homeowners, Safeguard sent subcontractors to perform the service of replacing the damaged parts of the homes and could not fulfill its obligations under the client contracts by simply shipping items to the homeowners. Because any tangible goods associated with the repair work were merely incidental to the services provided, we conclude that there was no genuine issue of material fact that Safeguard manufactured, produced, imported, or distributed a product for sale within the meaning of the Act. See 820 ILCS 120/1(3)(B) (West 2010). While we are aware of Johnson's arguments urging this court to uphold the applicability of the Act even where the involvement of tangible goods in the course of providing services to a client was merely incidental, we decline to do so. To hold as Johnson

suggests would render meaningless the plain terms under the Act that a "principal" is a business entity which contracts with a sales representative "to solicit orders for the product"–language which shows that a tangible product sold must be a main purpose and focus of the client contracts. See 820 ILCS 120/1 (West 2010); see *Ferguson v. Patton*, 2013 IL 112488, ¶ 28 (courts must construe a statute, if possible, so that no part of it is rendered meaningless or superfluous). Thus, we find that no genuine issue of material fact exists to show that Safeguard was a purveyor of tangible goods, and, therefore, Safeguard was not a "principal" within the meaning of the Act. Moreover, even assuming, arguendo, that the materials incidentally used in Safeguard's home repairs could be considered products under the Act, Johnson's claim would still fail as a matter of law because Safeguard was "merely in the chain of distribution" and was not the original source of those products so as to hold Safeguard liable as a "principal" under the Act. See *English Co.*, 278 Ill. App. 3d at 415. Therefore, Safeguard was not subject to the provisions of the Act. Accordingly, we hold that the circuit court properly granted summary judgment in favor of Safeguard on count I of the complaint.

¶ 24 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 25 Affirmed.