(No. 62915.—

PEDRO MOREL, Appellant, v. CORONET INSUR-
ANCE COMPANY, Appellee.

*Opinion filed June 10, 1987.*

GOLDENHERSH, J., took no part.

Donald J. Brooks, Ltd., Topper & Weiss, William J. Harte, Ltd., and Robert Schey, of Chicago (William J. Harte and Herbert L. Stride, of counsel), for appellant.

Charles A. Linn, Hugh B. Arnold and Mark H. Mennes, of Arnold & Kadjan, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, Pedro Morel, filed suit against his insurer, defendant Coronet Insurance Company, alleging that Coronet's deduction of attorney fees from funds recovered by Coronet on the plaintiff's behalf violated section 143b of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 755b). Finding that the charges deducted by defendant Coronet were incurred expenses, which may be deducted by an insurer under section 143b, rather than administrative expenses, which cannot be deducted under the statute, the trial judge granted the defendant's motion to dismiss the lawsuit. The appellate court affirmed the dismissal, finding that the attorney fees deducted by Coronet were incurred expenses under section 143b. (138 Ill. App. 3d 963). We allowed the plaintiff's petition for leave to appeal, pursuant to Rule 315 (103 Ill. 2d R. 315).

The record discloses that on February 3, 1979, the plaintiff was involved in an automobile accident, which resulted in damage to his vehicle. The defendant, Coronet Insurance, insured the plaintiff against property damage to his vehicle under a policy which apparently had a $250 deductible. (Plaintiff's complaint mentions a $200 deductible; all other references to the deductible place the amount at $250. That part of the insurance policy stating the deductible is not contained in the record.) Pursuant to the policy, the defendant reimbursed the plaintiff for the amount of damage to his vehicle, minus a $250 deductible.

The insurance policy subrogated the defendant to the plaintiff's right of recovery for the amount the company paid to the plaintiff under the policy; section 143b subrogated plaintiff's deductible to the defendant, provided that the defendant pay over to the plaintiff his *pro rata* share of the net recovery after defendant deducted its incurred expenses. The defendant insurer attempted to settle plaintiff's claim with the party causing the damage, but was unsuccessful. Subsequently, the defendant turned plaintiff's claim over to the law firm which handled most of the defendant's litigation and claims. An agreement between the defendant insurer and the law firm provided that the firm received an annual retainer fee from the defendant. The firm did not bill the defendant on an hourly or contingent fee basis and did not bill on a case-by-case basis; rather, the retainer fee was adjusted annually, based upon the total number of cases handled by the firm. The agreement between defendant and the law firm required the firm to handle all cases the defendant gave them. Counsel for the defendant stated that although the law firm's work did not consist exclusively of cases received from the defendant, the defendant's cases comprised 95 to 99% of the firm's business. Both the plaintiff and the defendant referred

to the law firm as defendant's "house counsel"; at oral argument before this court, counsel for the defendant suggested that because the firm was an independent law firm whose members are not salaried employees of the defendant, the term "house counsel" was somewhat of a misnomer. The defendant, in its answers to the plaintiff's interrogatories, stated that the law firm acts as house counsel to the defendant; in contrast to the oral arguments of its counsel, however, the defendant's answers, which were filed with the circuit court, affirmatively state that "each of the attorneys employed by the firm receives a retainer or salary from Coronet Insurance Company." The defendant refused to disclose to plaintiff the amounts of defendant's payments to the firm.

The law firm retained by the defendant ultimately settled the case with the person who collided with the plaintiff, recovering $272.71, 80% of the original loss. The defendant insurer determined that an 80% *pro rata* share of plaintiff's $250 deductible was $200. The defendant then forwarded a check to the plaintiff in the amount of $133.34, which was two-thirds of the amount of the plaintiff's *pro rata* $200 share. The defendant stated that it was withholding $66.66, one-third of plaintiff's share of his deductible, as payment of attorney fees incident to the recovery. The plaintiff endorsed and presented for payment the check tendered by the insurer. Subsequently, while conferring with his attorneys on another matter, the plaintiff questioned the propriety of the defendant's retention of attorney fees from the recovery of his deductible. The present litigation ensued. Plaintiff brought his lawsuit individually and as a representative of all persons insured by Coronet from whom Coronet had deducted attorney fees from amounts recovered on behalf of the insureds.

At the time the defendant withheld one-third of the recovery of plaintiff's deductible, section 143b of the Illinois Insurance Code provided:

"Any insurance carrier whose payment to its insured is reduced by a deductible amount under a policy providing collision coverage is subrogated to its insured's entire collision loss claim including the deductible amount ***. In claims for less than $500, if the deductible amount is included in the subrogated loss claim the insurance carrier shall pay the full pro rata deductible share to its insured out of the net recovery on the subrogated claim. In claims for less than $500, administrative expenses of the insurance carrier cannot be deducted from the gross recovery, and only incurred expenses of the carrier, such as attorney's fees, collection fees and adjuster's fees, may be deducted therefrom to determine the net recovery." (Ill. Rev. Stat. 1981, ch. 73, par. 755b.)

Effective January 1, 1984, Public Act 83—588 amended section 143b to remove the $500 limitations from the statute. See Ill. Rev. Stat. 1985, ch. 73, par. 755b.

Contending that the fees paid to its house counsel were an incurred expense rather than an administrative expense under section 143b, defendant Coronet filed a motion to dismiss the plaintiff's amended complaint. The trial judge received memoranda of law from the parties and heard oral arguments in support of and against the defendant's motion to dismiss. The trial judge then ruled that the sums deducted by the defendant for attorney fees were incurred expenses, which could properly be deducted from the plaintiff's recovery under section 143b. Accordingly, the trial judge granted the defendant's motion to dismiss under section 2—619(a)(9) of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(9).) The appellate court affirmed the dismissal, concluding that the costs deducted from an insured's gross recovery were incurred expenses under section 143b.

The plaintiff contends that an insurer's annual retainer payments to a law firm acting as house counsel are administrative expenses, because the retainer fee exists regardless of whether the firm handles one particular case or another. The plaintiff submits that the fees the defendant pays to its retained law firm under the agreement bear no relationship to the time spent or work done on the plaintiff's subrogation claim or any other individual case. Rather, plaintiff argues, the one-third of his recovered deductible withheld by the defendant was an arbitrary figure entirely unrelated to the amount the defendant paid its attorneys for the plaintiff's case or other subrogation cases.

The defendant presented in the trial court an affidavit from one of the members of the law firm retained by the defendant. The affidavit states that the retainer fee the defendant pays to the firm is based upon the total volume of cases handled by the firm. Additionally, the affidavit explains that, in subrogation cases involving $500 or less, the amounts withheld by defendant from insured's recoveries have never been sufficient to compensate the defendant for the retainer fee the defendant pays the law firm for handling these cases. The affidavit does not disclose the amount of the retainer fee, or whether the law firm maintains records of time expended or results reached in particular cases. The affidavit similarly does not disclose whether the retainer fee paid to the firm by the defendant exceeds only the amounts withheld from the insured's portions of the recoveries or whether it exceeds also an amount equal to one-third of the total recoveries, including both the insured's and the insurer's portions of the recoveries.

An affidavit of another member of the law firm stated that the $66.66 withheld from the plaintiff's recovery was less than the cost of the firm's services to the defendant in this matter. The affidavit does not say

that the $66.66 was paid to the firm for this matter, nor does it specify any particular amount paid to the firm for that purpose. The record does not contain the actual fee agreement of the defendant and its retained law firm, nor does the record disclose how the retainer fee was adjusted annually according to the number of cases referred by the defendant. The record does state, however, that subrogation cases are only one of the four types of cases the law firm handles for the defendant.

Public Act 81—876, which became effective January 1, 1980, amended section 143b to allow insurers to deduct from their recovery of their insureds' subrogation claims certain expenses incurred in obtaining the recovery. Prior to Public Act 81—876, section 143b had no provision that allowed insurers to withhold any expenses incurred by the insurer in pursuing subrogation claims. (See Ill. Rev. Stat. 1977, ch. 73, par. 755b.) The plaintiff has submitted affidavits of the sponsors of Public Act 81—876 in both the Illinois House of Representatives and Senate. The affidavits state that neither sponsor intended that an insurer's payments to its house counsel could be withheld from the insured's recovery as an incurred expense. (Affidavits of former Representative Bernard E. Epton and Senator Howard W. Carroll.)

This court has previously looked to the debates on the floor of the General Assembly to ascertain the legislative intent underlying specific legislation. (*Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 136; see, *e.g., People v. Boykin* (1983), 94 Ill. 2d 138.) Statements made by members of the General Assembly in legislative debate assist in revealing the legislative intent behind a statute only when examined in the context of the debate in its entirety. "Legislative intent" speaks to the will of the legislature as a collective body, rather than the will of individual legislators. Statements of individual legislators made outside the context of legislative

debates, however, are immune from the verbal interplay and the presentation of countervailing ideas inherent in the debate process. Statements of individual legislators made, as here, in excess of four years after the legislation was passed reflect only the viewpoints of those individuals, not necessarily the intent of the legislature as a whole when the bill was debated and passed. Affidavits of individual legislators as to the meaning of specific legislation, therefore, do not constitute meaningful evidence of legislative intent.

Distinguishing administrative expenses from incurred expenses under section 143b of the Illinois Insurance Code is key to resolving the instant controversy. We perceive "administrative expenses" within the meaning of section 143b to be those expenses generally incurred by an insurance carrier as a normal cost of doing business, which do not relate to any insured's collision loss claim in particular; conversely, the term "incurred expenses" as used in the statute applies to out-of-pocket expenses incurred by an insurer in connection with a specific claim. Utility bills, for example, would ordinarily constitute administrative expenses, as they comprise a normal cost of an insurer's business.

An expense is incurred within the meaning of section 143b only if it is incurred in connection with an identifiable case. In the present case, the insurer's counsel recovered $272.71 on the plaintiff's collision claim; of that amount, $200 was attributed to plaintiff for his deductible, and $72.71 was attributed to the insurer for its prior payment to the plaintiff under the policy. In accounting to the plaintiff, the insurer indicated that $90.89, or one-third of the total amount recovered, was paid as attorney fees. Of that amount, $66.66 was charged against plaintiff's recovery and $24.23 was charged against the amount recovered on behalf of the defendant. To recover attorney fees from the insured as incurred expenses, the

defendant must show what portion of its payment to the law firm is directly attributable to the plaintiff's case, and that the amount is a *pro rata* share of the amount actually paid as attorney fees for services rendered in that particular case. To qualify as incurred expenses under the statute, the amount withheld by the insurer may not be some entirely arbitrary figure chosen by the insurer to enable it to offset its overall legal expenses, without any connection to attorney fees as incurred expenses paid the attorneys in any given case. In order to withhold from the insured's *pro rata* share of the recovery, the insurer must be able to establish, therefore, that it paid its attorneys at least $90.89 in connection with the plaintiff's claim, under the fee agreement between the defendant and its retained law firm.

It is not required that a law firm must bill an insurer individually for each case which the firm handles on behalf of the insurance carrier. The manner of the carrier's payment to the firm does not transform the nature of the expense from incurred to administrative. An expense specifically related to an individual case is an incurred expense, regardless of whether the insurer pays the cost singly or together with a number of other similar expenses. What is important, however, is that the insurer can relate the amount it withholds as an incurred expense from the insured's recovery to a specific amount the insurer paid for that particular case.

The trial judge in the present case ruled that the amounts withheld from the plaintiff's recovery were properly withheld as incurred expenses. By the dismissal, the trial judge did not require the defendant to prove that the amount withheld from the plaintiff's *pro rata* share of the recovery was actually paid by the defendant to the law firm as attorney fees in this case.

Because attorney fees must be incurred in connection with a particular case in order to qualify as incurred ex-

penses under the statute, we reverse and remand for further proceedings consistent with this opinion. The plaintiff should be allowed to present his case and the insurer may defend by offering evidence that the amount by which the gross recovery was reduced to determine the net recovery was actually paid by the defendant as attorney fees incurred in connection with this case.

The defendant further contends that, even if fees charged are administrative expenses rather than incurred expenses, the plaintiff here lacks standing to represent the class of persons from whom the defendant deducted attorney fees. The defendant alleges that the plaintiff endorsed a check tendered by the defendant. Directly above plaintiff's endorsement was language stating that the plaintiff's signature on the check constituted full settlement of the action and released the defendant from further claims in this matter. Accordingly, the defendant submits, the plaintiff's signature on the check constituted an accord and satisfaction of plaintiff's claim and bars the present action. See *Sears, Sucsy & Co. v. Insurance Co. of North America* (N.D. Ill. 1974), 392 F. Supp. 398; *Quaintance Associates, Inc. v. PLM, Inc.* (1981), 95 Ill. App. 3d 818.

Because the trial judge granted the defendant's motion to dismiss on the ground that the defendant's deduction was permissible as an incurred expense under section 143b, the trial judge did not reach the issue of accord and satisfaction, or the question of certification of plaintiff's class. The opinion of the appellate court, too, addressed only the issue of whether the expense was incurred or administrative. Because an accord and satisfaction requires certain factual findings, such as a *bona fide* dispute over an amount due (see *In re Estate of Cunningham* (1924), 311 Ill. 311), the trial court, on remand, must determine whether plaintiff's actions constituted an accord and satisfaction. If the trial court con-

28

cludes that the plaintiff's claim is not barred by an accord and satisfaction in this case, the trial court should address the issue of whether class certification is appropriate.

Accordingly, we reverse the judgments of the appellate court and the circuit court, and remand the instant case to the circuit court of Cook County for proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.