ILLINOIS FEDERATION OF TEACHERS, AFT-AFL-CIO, *et al.*, Petitioners-Appellants, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

First District (2nd Division)   No. 1—94—1235

Opinion filed March 26, 1996.—Rehearing denied April 26, 1996.

Jacobs, Burns, Sugarman, Orlove & Stanton, of Chicago (Charles Orlove, of counsel), for petitioners.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.

JUSTICE SCARIANO delivered the opinion of the court:

Nonunion members filed objections with the Illinois Educational Labor Relations Board (Board) claiming that they had been assessed fair share fees by the petitioner unions (Unions) during the 1991-92 academic year that were not chargeable to them, including internal and external organizing expenses.[1]

At the administrative hearing, Ed Geppert, Illinois Federation of Teachers' assistant to the president for organizing, testified at length regarding the "direct" benefits accruing from organizing expenses: external organizing results in additional members, thus producing power, clout and the ability to better represent the members in the collective bargaining process; it helps raise industry standards, directly benefitting employees in existing organized districts; and it allows the union to provide better services to existing local units through economies of scale; and internal organizing benefits unit members by increasing the local union's strength in negotiations.

On April 9, 1993, the administrative law judge (the ALJ) issued his recommended decision and order, wherein he relied upon Geppert's testimony to find organizing expenses chargeable:

"The Federations have presented detailed, credible evidence that both external and internal organizing increase the unions' ability to engage in effective collective bargaining. The record evidence covers organizing at the national, state and local levels. That evidence further demonstrates that organizing brings direct economic benefits to nonmembers and enables the unions to provide more comprehensive service to bargaining unit members. I have concluded that organizing is therefore ' "germane" to collective bargaining activity' as required by *Lehnert*.

I have further concluded that it is [c]onstitutionally permissible

[1]External organizing involves extending representational rights to new units, and internal organizing involves recruiting members in existing units and participating in representational proceedings when challenged as the exclusive agent.

to charge nonmembers for such organizing. Finally, I have concluded that this result is not inconsistent with the Board's decision in *East St. Louis,* since it is based on a rationale that was not at issue in that decision, and was therefore not ruled upon in that case."

After an objector filed exceptions to the ALJ's proposed disposition of the case, the Board issued its order, wherein it reversed that portion of the ALJ's recommendation which had concluded that internal and external organizing expenses were properly chargeable to nonmembers. This decision was based upon *Ellis, Lehnert,* and comments made by a sponsor of the IELRA. (These authorities are cited in full and discussed below.)

■ In this case, the Unions appeal solely that portion of the Board's order that holds that internal and external organizing expenses are not chargeable to nonmembers as part of the their "fair share fees." Nonmembers' obligation to pay their fair share of fees derives from the Illinois Educational Labor Relations Act as follows:

"Non-member fair share payments. When a collective bargaining agreement is entered into with an exclusive representative, it may include a provision requiring employees covered by the agreement who are not members of the organization to pay to the organization a fair share fee for services rendered. The exclusive representative shall certify to the employer an amount not to exceed the dues uniformly required of members which shall constitute each non member employee's fair share fee. The fair share fee payment shall be deducted by the employer from the earnings of the non member employees and paid to the exclusive representative." 115 ILCS 5/11 (West 1992).

The United States Supreme Court has addressed the chargeability of a union's organizing expenses to nonmembers in *Ellis v. Brotherhood of Ry., Airline & Steamship Clerks, Freight Handlers, Express & Station Employees,* 466 U.S. 435, 80 L. Ed. 2d 428, 104 S. Ct. 1883 (1984) (finding the union's organizing expenses not chargeable to nonmembers under the Railway Labor Act (see 45 U.S.C. § 151 *et seq.* (1988))). The test used in *Ellis* was:

"whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues. Under this standard, objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the

duties of the union as exclusive representative of the employees in the bargaining unit." *Ellis*, 466 U.S. at 448, 80 L. Ed. 2d at 442, 104 S. Ct. at 1892.

Applying this test to external organizing expenses, the Court found that "[u]sing dues exacted from an objecting employee to recruit members among workers outside the bargaining unit can afford only the most attenuated benefits to collective bargaining on behalf of the dues payer." *Ellis*, 466 U.S. at 452, 80 L. Ed. 2d at 444, 104 S. Ct. at 1894. As to internal organizing expenses, the Court noted that it would be "perverse" to allow "the union to charge to objecting nonmembers part of the costs of attempting to convince them to become members." *Ellis*, 466 U.S. at 452 n.13, 80 L. Ed. 2d at 444 n.13, 104 S. Ct. at 1894 n.13 (interpreting the Railway Labor Act).

In reaching these conclusions, the Court expressly rejected a court of appeals finding that such expenses were chargeable to objecting employees "because organizing efforts are aimed toward a stronger union, which in turn would be more successful at the bargaining table." *Ellis*, 466 U.S. at 451, 80 L. Ed. 2d at 444, 104 S. Ct. at 1894. Notwithstanding the rationale and holding in *Ellis*, the unions appear to present the same argument, albeit in far greater detail (*viz.* Geppert's testimony). They claim that *Ellis* is distinguishable because it was based upon "an ill-defined factual record on organizing"; "Geppert's testimony is the record here"; and therefore, this court is not compelled by *Ellis* to find that organizing expenses offer only "attenuated benefits" to collective bargaining.

However, as the Board stated in its order: "*Ellis* clearly states that both external and internal organizing are not chargeable." The *Ellis* court did not premise its holding on the union's failure to present enough evidence of a "direct" benefit; in fact, it carefully considered the argument that organizing strengthened the union, and characterized that benefit as "attenuated." *Ellis*, 466 U.S. at 451, 80 L. Ed. 2d at 444, 104 S. Ct. at 1894.

The Unions attempt to distinguish *Ellis* on the ground that it was decided under the Railway Labor Act. However, in *Lehnert*, the Supreme Court cited *Ellis* and found that it "necessarily provide[d] some guidance" for their analysis. *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 516, 114 L. Ed. 2d 572, 587, 111 S. Ct. 1950, 1957 (1991). Similarly, this court has relied upon *Ellis* in determining whether expenses were chargeable under the Illinois Educational Labor Relations Act. *Antry v. Illinois Educational Labor Relations Board*, 195 Ill. App. 3d 221, 258, 552 N.E.2d 313, 328 (1990).

■ In *Lehnert*, the Supreme Court addressed whether lobbying

expenses and political activities could be charged to objecting nonmembers, and used the following test: "chargeable activities must (1) be 'germane' to collective-bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding 'free riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. at 519, 114 L. Ed. 2d at 589, 111 S. Ct. at 1959.

■ While the administrative law judge found, based upon Geppert's testimony, that organizing expenses were "germane" to collective bargaining activity, the Board concluded that "[b]ased on this testimony, external organizing is not sufficiently germane to collective bargaining to be chargeable under *Lehnert*" and that "only an indirect relationship [was established] between internal organizing and contract administration." Additionally, in *Ellis*, the Court stated that any "free-rider problem" in the context of organizing expenses "is a far cry from the free-rider problem with which Congress was concerned." *Ellis*, 466 U.S. at 453, 80 L. Ed. 2d at 445, 104 S. Ct. at 1894-95.

The Unions note that in *Local 504, Lake County Federation of Teachers*, the Board distinguished *Ellis*, and held that organizing activities were chargeable to nonmembers, based upon the assumption that lobbying was chargeable, and it noted also the influence of organizing upon the effectiveness of lobbying. *Local 504, Lake County Federation of Teachers*, 4 Pub. Employee Rep. (Ill.) par. 1096, No. 85—FS—0044—C, at IX—391-92 (IELRB June 29, 1988) (*Lake County*). However, as the Unions concede, *Lake County* was reversed after *Lehnert* in *Local 1220, East St. Louis Federation of Teachers*, wherein the Board stated: "Organizing expenses cannot be considered chargeable on the ground that they increase a union's power in nonchargeable lobbying." *Local 1220, East St. Louis Federation of Teachers*, 8 Pub. Employee Rep. (Ill.) par. 1078, No. 91—FS—0006—S, at IX—300 (IELRB July 10, 1992) (*East St. Louis*). In its order in the instant case, the Board stated that "[w]e adhere to the result of *East St. Louis (Dalan)*."

The Board also relied upon the following statement by Senator Bruce, in explaining the fair share provisions of the Illinois Educational Labor Relations Act:

> "The Supreme Court has spoken on agency shop and they have very clearly outlined what you can do and we very wisely put in exactly what those requirements are, no political contributions, *no organizing efforts*, only for the administration of the collective bargaining process, contract administration and their [*sic*] mat-

ters on wages, hours and terms and conditions of employment." (Emphasis added.) 83d Ill. Gen. Assem., Senate Proceedings, June 27, 1983, at 32 (Statement of Senator Bruce).

The Unions respond that because Senator Bruce was not being asked to comment specifically on charging nonmembers for organizing expenses, "his remarks were not deliberate utterances," and that as a matter of law the Board erred in considering this comment because "[i]t is the rule that a court in determining legislative intent may not consider statements made by those interested in passage of the law". See *Hyatt Corp. v. Sweet*, 230 Ill. App. 3d 423, 594 N.E.2d 1243 (1992), *appeal denied*, 146 Ill. 2d 627 (1992).

However, this quotation, which the Unions cite as authority pronounced by the court in *Hyatt Corp.*, is both taken out of context and an inaccurate statement of the law, all too frequently and thoughtlessly repeated as canonical. The quotation refers, however, to the trial court's erroneous consideration in that case of comments by "a spokesman for the [Illinois Department of Revenue]." *Hyatt Corp.*, 230 Ill. App. 3d at 436. But the expressions of legislative intent considered in this case are those made by the Senate sponsor of the statute at issue here. Even *Hyatt Corp.* clearly recognizes that: "We conclude that we may properly consider the debates, at least, to determine the history of the legislation and the evil it was intended to remedy." *Hyatt Corp.*, 230 Ill. App. 3d at 430. Further, our supreme court "has previously looked to the debates on the floor of the General Assembly to ascertain the legislative intent underlying specific legislation." *Morel v. Coronet Insurance Co.*, 117 Ill. 2d 18, 24, 509 N.E.2d 996 (1987). Accordingly, the comments of Senator Bruce are highly appropriate matters to consider in discerning the intent of the fair share provisions of the Illinois Educational Labor Relations Act.

Accordingly, for all of the foregoing reasons, the order of the Illinois Educational Labor Relations Board is affirmed.

Affirmed.

HARTMAN, P.J., and DiVITO, J., concur.