# Illinois Official Reports

## Appellate Court

---

### *Golden v. Puccinelli*, 2016 IL App (1st) 150921

---

| | |
|---|---|
| Appellate Court Caption | JOHN GOLDEN, Plaintiff-Appellee, v. SEAN PUCCINELLI, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-0921 |
| Filed | September 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 88-L-25088; the Hon. Alexander J. White, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Law Offices of Bradley H. Foreman, P.C., of Chicago (Bradley H. Foreman, of counsel), for appellant.<br><br>Ian Brenson, of La Grange, for appellee. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Justice Reyes concurred in the judgment and opinion.<br>Presiding Justice Gordon concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1     This appeal involves the revival of judgments and section 2-1602(h) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1602(h) (West 2014)), which allows enforcement proceedings to continue to conclusion if a judgment becomes dormant during the pendency of an enforcement proceeding against wages.

¶ 2     This appeal arose from a personal injury litigation that resulted in a judgment in 1993 in favor of plaintiff John Golden and against defendant Sean Puccinelli. Eventually, Golden obtained a wage deduction judgment against Puccinelli's employer. In 2014, Puccinelli moved the circuit court to terminate the wage deduction proceedings and declare the 1993 judgment lapsed because more than 20 years had passed since it was entered. The circuit court denied the motion, holding that section 2-1602(h) applied to allow the judgment to be enforced and this application of section 2-1602(h) did not violate equal protection.

¶ 3     On appeal, Puccinelli contends the 2013 amendment that enacted section 2-1602(h) could not apply retroactively to revive the 1993 judgment in this case because the judgment had lapsed before the effective date of the statutory amendment. Alternatively, Puccinelli argues that if section 2-1602(h) applied in wage deduction proceedings to extend the enforcement of judgments more than 20 years old, then the amended statute violates equal protection and is unconstitutional because it discriminates arbitrarily between different types of judgment debtors.

¶ 4     For the reasons that follow, we find that the circuit court erred in denying Puccinelli's motion to terminate wage deduction proceedings and declare the over-20-year-old judgment entered against him lapsed. We hold that section 2-1602(h) of the Code does not extend the 20-year limitation on the revival of judgments. Accordingly, we reverse the judgment of the circuit court.

¶ 5                                                   I. BACKGROUND

¶ 6     On April 2, 1993, the circuit court entered a judgment in favor of Golden and against Puccinelli for $162,746. Between 1994 and 1999, Golden filed a series of wage deduction affidavits and summonses in an attempt to collect the judgment. On August 24, 1999, the circuit court entered a wage deduction order against Puccinelli's employer.

¶ 7     On January 16, 2005, Golden filed a petition to revive the judgment, and the circuit court entered an order reviving the judgment on August 25, 2005. There were no subsequent petitions for revival. Wages have been, and continue to be, deducted. To date, the judgment has not been completely satisfied.

¶ 8     On November 10, 2014, Puccinelli moved the court to terminate the wage deduction proceedings and declare the judgment lapsed. He contended the judgment could not be enforced because more than 7 years had elapsed from the time the judgment was rendered and more than 20 years had elapsed since the judgment was entered.

¶ 9     In response, Golden argued that the wage deductions should continue until the judgment was paid because an August 2013 amendment that added subsection (h) to section 2-1602 of the Code (Pub. Act 98-557 (eff. Jan. 1, 2014) (adding 735 ILCS 5/2-1602(h)) extended the 20-year time limitation in cases like his, where the judgment became dormant during the

pendency of enforcement proceedings and the enforcement was done under court supervision, included a wage deduction order, and was against Puccinelli's employer.

¶ 10    Puccinelli responded that the section 2-1602(h) amendment could not apply retroactively and would violate equal protection by treating judgment debtors undergoing wage deduction proceedings differently from other judgment debtors.

¶ 11    On February 27, 2015, the circuit court denied Puccinelli's motion, ruling that section 2-1602(h) applied to allow the judgment to be enforced until the judgment was satisfied and this application of the statute did not violate equal protection. Puccinelli timely appealed.

¶ 12                                              II. ANALYSIS

¶ 13    Although the parties' arguments address only the retroactive application of the judgment revival statute and equal protection, the relevant issue here is whether section 2-1602(h) of the Code permits wage deduction proceedings to continue until the underlying judgment is satisfied, regardless of whether the 20-year time limitation for judgment revival has lapsed. If so, the court then would address whether the amendment adding subsection 2-1602(h) applies retroactively and whether the amendment and its retroactive application violate equal protection guaranties. The circuit court's ruling and the parties' arguments on appeal are based on their presumption that section 2-1602(h) creates an exception to the 20-year time limitation for judgment revival if the judgment becomes dormant during a pending, court supervised enforcement proceeding against wages. This presumption, however, lacks merit, and we find that the circuit court and the parties have misconstrued section 2-1602(h).

¶ 14    We review an issue of statutory interpretation, which is a question of law, *de novo*. *People v. Messenger*, 2015 IL App (3d) 130581, ¶ 12. In interpreting a statute, our goal must be "to determine and effectuate the intent of the legislature." *People v. Amigon*, 239 Ill. 2d 71, 84 (2010). Our supreme court has stated that the "most reliable means" of doing so "is to apply the plain and ordinary meaning of the statutory language." *Id.* at 84-85.

¶ 15    When the plain language of the statute is clear and unambiguous, the legislative intent that is discernible from this language must prevail and no resort to other tools of statutory construction is necessary. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). We must rely on the plain and ordinary meaning of the words chosen by the legislature and give the language of the statute its effect as written, without reading into it exceptions, limitations, or conditions that the legislature did not express. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 426 (2002). Sections of the same statute "should be construed with every other part or section of the statute to produce a harmonious whole." *Id.* at 422. "Words and phrases should not be construed in isolation, but interpreted in light of other relevant portions of the statute so that, if possible, no term is rendered superfluous or meaningless." *Id.* "Further, we presume that the legislature, when it enacted the statute, did not intend absurdity, inconvenience, or injustice." *Id.*

¶ 16    "A statute is ambiguous if it is susceptible to two equally reasonable and conflicting interpretations." *Id.* at 426. When the statutory language is ambiguous, we "may consider other extrinsic aids for construction, such as legislative history and transcripts of legislative debates, to resolve the ambiguity." *People v. Collins*, 214 Ill. 2d 206, 214 (2005). The doctrine of *in pari materia* is another extrinsic aid for construction of an ambiguous statute. *People v. 1946 Buick*, 127 Ill. 2d 374, 377 (1989) ("before the rule of *in pari materia* is applied, the statute to be construed must be found to be ambiguous"). Under the doctrine of *in pari materia*, "two

legislative acts that address the same subject are considered with reference to one another, so that they may be given harmonious effect." *Land*, 202 Ill. 2d at 422.

¶ 17    In Illinois, apart from exceptions not applicable in this case, "no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by [section 2-1601 of the Code]." 735 ILCS 5/12-108(a) (West 2014). Pursuant to the statute of limitations, a "petition to revive a judgment, as provided by Section 2-1601 of [the] Code, may be filed no later than 20 years next after the date of entry of such judgment." 735 ILCS 5/13-218 (West 2014); *Revolution Portfolio, LLC v. Beale*, 332 Ill. App. 3d 595, 600-01 (2002). Section 2-1601 of the Code abolished *scire facias* and provided that any relief that previously could have been obtained by *scire facias* could now be had by filing a petition under section 2-1602 of the Code. 735 ILCS 5/2-1601 (West 2014).

¶ 18    Section 2-1602 sets out the revival procedure and provides, in pertinent part:

> "(a) *A judgment may be revived* by filing a petition to revive the judgment in the seventh year after its entry, or in the seventh year after its last revival, or in the twentieth year after its entry, or *at any other time within 20 years after its entry if the judgment becomes dormant*. The provisions of this amendatory act of the 96th General Assembly are declarative of existing law.
>
> * * *
>
> (g) This Section does not apply to a child support judgment or to a judgment recovered in an action for damages for an injury described in Section 13-214.1, which need not be revived as provided in this Section and which may be enforced at any time as provided in section 12-108.
>
> (h) *If a judgment becomes dormant during the pendency of an enforcement proceeding against wages* under Part 14 of this Article or under Article XII, *the enforcement may continue to conclusion without revival of the underlying judgment* so long as the enforcement is done under court supervision and includes a wage deduction order or turn over order and is against an employer, garnishee, or other third party respondent." (Emphases added.) 735 ILCS 5/2-1602(a), (g), (h) (West 2014).

¶ 19    The threshold question for this court is whether certain language in section 2-1602(h)—*i.e.*, the phrase "the enforcement may continue to conclusion"—is ambiguous. Before section 2-1602 was amended in August 2013 to add subsection (h), this court consistently held that section 2-1602(a) allowed a judgment to be revived any time within 20 years of its entry but once the 20 years elapsed, the judgment was no longer viable and the entry of a judgment of revivor did not toll the 20-year time limit. See *Burman v. Snyder*, 2014 IL App (1st) 130772, ¶ 13 (citing *Aetna Casualty & Surety Co. v. Brunsmann*, 77 Ill. App. 2d 219, 223 (1966)). After the 2013 amendment, section 2-1602(h), standing alone, does not reveal a legislative intent concerning whether the pending enforcement proceedings against wages described in subsection (h) are either subject to or exempt from the 20-year time limit on judgment revivals.

¶ 20    Both the circuit court and the parties have interpreted the phrase at issue to mean that a pending, court-supervised wage deduction proceeding may continue until the judgment and all accrued interest is satisfied, even if that enforcement of the judgment goes beyond the 20-year time limit for judgment revivals. We disagree and find the plain language of the statute renders

- 4 -

the phrase in question susceptible to the sole reasonable interpretation that section 2-1602(h) operates merely to make it unnecessary for a judgment creditor to undergo the burden of reviving a dormant judgment every 7 years as long as an enforcement proceeding against wages is pending and the enforcement is done under court supervision; includes a wage deduction or turn over order; and is against an employer, garnishee, or other third-party respondent; however, the pending enforcement proceeding remains subject to the 20-year time limit on judgment revivals set forth in section 2-1602(a).

¶ 21    Section 2-1602 does not indicate what is meant by "conclusion" in subsection (h), and the ordinary meaning of that word—"the last part of something," such as a "result" or "outcome" (Merriam-Webster's Collegiate Dictionary 239 (10th ed. 1998))—sheds no further light on the matter before us. However, according to the plain language of subsection (h), the phrase in question applies only to judgments that have become "dormant." A dormant judgment is not the same as a lapsed judgment. Although the term *dormant judgment* is not defined in section 2-1602 or elsewhere in the Code, a "judgment not satisfied or barred by lapse of time, but temporarily inoperative as far as the right to issue execution is concerned, is usually called a dormant judgment." 23A Ill. L. and Prac. *Judgments* § 266, at 178 (2008); 50 C.J.S. *Judgments* § 851 (2009). "Such a judgment has validity as a still-subsisting debt of the judgment debtor." 50 C.J.S. *Judgments* § 851, at 177 (2009). Black's Law Dictionary 846 (7th ed. 1999), defines a dormant judgment as a "judgment that has not been executed or enforced *within the statutory time limit*. As a result, any judgment lien may have been lost and execution cannot be issued unless the judgment creditor first revives the judgment." (Emphasis added.) The plain language of subsection (h) establishes that the phrase in question does not apply to judgments barred by lapse of time, which, according to the statute of limitations for filing a petition to revive a judgment, occurs 20 years after the date of entry of the judgment. 735 ILCS 5/13-218 (West 2014).

¶ 22    Thus, the plain language of the statute establishes that the 20-year time limit to file a revival petition still applies to the pending wage deduction proceedings described in subsection (h); subsection (h) simply removes the routine requirement of moving the court (and thereby incurring additional legal expenses) every 7 years to revive a dormant judgment in a pending enforcement proceeding in order for the judgment creditor to continue to collect on a wage deduction order. Further support for this interpretation is found in subsection (g), which completely exempts child support judgments and personal injury awards arising from certain crimes from the provisions of section 2-1602 because those judgments "need not be revived" and "may be enforced at any time." 735 ILCS 5/2-1602(g) (West 2014). If the legislature had intended to exempt the enforcement proceedings described in subsection (h) from the 20-year time limit, the legislature would have explicitly stated so, as it did in subsection (g). Subsection (h) should not be read in isolation, but rather with an understanding of how it functions within the context of the statute as a whole and by giving a reasonable meaning to all words and sentences so that no part is rendered superfluous. *People v. Glisson*, 202 Ill. 2d 499, 505 (2002).

¶ 23    Subsection (a) states that there is a 20-year time limit in which judgments can be revived in order to be enforced—by wage deduction proceedings or otherwise. Reading subsection (h) to permit the enforcement of judgments to proceed until satisfaction and potentially past the clearly expressed 20-year time limit is contradictory of the clear and plain text of subsection (a). Read consistently with subsections (a) and (g), the phrase "enforcement may continue to

conclusion" in subsection (h) must mean until the judgment is satisfied or otherwise discharged but within the 20-year time limit for the revival of judgments.

¶ 24   Even assuming, *arguendo*, that the statute is ambiguous, section 2-1602 must be construed *in pari materia* with sections 12-108 and 13-218 of the Code, which also address the subjects of enforcement and revival of judgments and, thus, must be considered with reference to one another so that they may be given harmonious effect. See *Land*, 202 Ill. 2d at 422. A wage deduction order "shall have the force and effect and be enforceable as a judgment." 735 ILCS 5/12-802 (West 2014). Section 12-108 provides that "[e]xcept as herein provided, no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2-1601 of this Act." 735 ILCS 5/12-108 (West 2014). Moreover, section 13-218 provides that the statute of limitations to file a petition to revive a judgment is "no later than 20 years next after the date of entry of such judgment." 735 ILCS 5/13-218 (West 2014). When the legislature amended section 2-1602 to add subsection (h), the legislature did nothing to amend the provisions of sections 12-108 and 13-218 concerning the 7-year period to revive dormant judgments and the 20-year time limit on the revival of judgments. Reading sections 2-1602, 12-108, and 13-218 so that they may be given harmonious effect, the phrase "enforcement may continue to conclusion" cannot be construed to mean that pending enforcement proceedings continue until the judgment is satisfied even if the 20-year time limit for enforcement has lapsed.

¶ 25   Finally, the legislative history of the 2013 amendment to section 2-1602, which is quoted extensively in Puccinelli's brief, does not convince this court that the legislature intended subsection (h) to allow pending wage deduction proceedings to continue beyond the 20-year time limit on revivals of judgments. When the amendment at issue was being discussed by the judiciary committee of the Illinois House of Representatives as Senate Bill 1044, the proponent of the bill, Representative Lang, explained the bill would save both the debtor and creditor time and money by allowing an enforcement proceeding to continue beyond seven years without requiring the parties to go back to court to recertify the judgment. See Audio Recording of the Action of the Judiciary Committee of the Illinois House of Representatives on Senate Bill 1044 (May 8, 2013) (on file with the Transcribing Room of the Illinois House of Representatives). Representative Lang explained that the legislation addressed situations where the creditor timely pursued enforcement of a judgment but the debtor disappeared or became unemployed and then resurfaced 8, 9, or 10 years later with a job, lottery winnings, or a bank account.

¶ 26   When Chairperson Nekritz expressed concerns about allowing a judgment to continue either for seven years or forever without requiring the creditor to do something, Representative Lang responded that although the bill did not contain specific language repealing the revival provisions, he thought, "in essence, that's what the Bill does as drafted." Another committee member, Representative Thapedi, thought it was problematic to allow creditors who do not try to collect on a judgment after seven years to "have a hammer over [the consumer debtor's] head for an extended period of time." Representative Lang responded that the bill would save consumer debtors money in court costs and interest on the judgment because creditors would not have to return to court in eight years to revive the judgment.

¶ 27   Chairperson Nekritz again raised public policy concerns about removing the certainty provided by the statute of limitations which allowed debtors to know that after a period of time they could have some certainty and move forward. Representative Lang then asked why

debtors should "have relief for money they owe, whether it's seven years or 107 years. If they owe the money, they owe the money, right?" Chairperson Nekritz replied that, just as the statute of limitations for crimes required the State to timely prosecute suspects, the statute of limitations on judgment revivals required creditors to timely pursue the enforcement of judgments. Representative Lang argued that concerns about the statute of limitations lacked merit because the judgments resulted from timely filed lawsuits. Thereafter, nine members of the committee voted to favorably report Senate Bill 1044 to the floor, and six members voted against it.

¶ 28    On May 26, 2013, Senate Bill 1044 came before the Illinois House of Representatives for a vote, and Representative Reis noted that although "there was quite a bit of opposition to this [bill] in committee," Representative Lang's summation of the bill did not mention the concerns raised by the opposition. 98th Ill. Gen. Assem., House Proceedings, May 26, 2013, at 17 (statements of Representative Reis). Representative Lang responded that the opposition had "some concern about an area of the Bill called Revival of Judgment," which "was taken care of" by "the Amendment [that] changed it in the way that the committee asked [him] to." *Id.* (statements of Representative Lang). Thereafter, the House passed the bill, the Illinois Senate concurred with the House's amendment, and the governor approved the law in August 2013.

¶ 29    The statements of individual members of the General Assembly in legislative debate assist the court in revealing the legislative intent behind a statute only when the statements are examined in the context of the entire debate. *Morel v. Coronet Insurance Co.*, 117 Ill. 2d 18, 24-25 (1987). Legislative intent, however, refers to the will of the legislature as a collective body, rather than the will of individual legislators. *Id.* at 24. While a court may give some consideration in construing a statute to the statements of the sponsor of a bill, such statements are not controlling. *People v. Hickman*, 163 Ill. 2d 250, 262 (1994) (citing *People v. Porter*, 122 Ill. 2d 64, 81 (1988)).

¶ 30    Here, members of the judicial committee were often speaking at cross-purposes with Representative Lang because they were not correctly informed that the statute of limitations to revive a judgment was 20 years. Consequently, members of the committee erroneously referred to the 7-year time period within which a judgment becomes dormant as the statute of limitations to revive a judgment. Furthermore, Representative Lang's explanations contained some misstatements of law. Representative Lang's statements to the committee are not binding on this court, and the committee's discussion raised serious opposition to the idea of allowing certain judgments to be enforced indefinitely. This opposition was noted by Representative Reis when the bill came before the entire House, and Representative Lang assured him that the amendment the committee asked him to make had taken care of the concerns raised by the opposition. Based upon our *in pari materia* analysis of the relevant statutes, *supra*, the legislative history of subsection (h) does not lead this court to accept the interpretation of the circuit court and the parties that subsection (h) created an exception to the 20-year time limit on judgment revivals for the pending wage deduction proceedings described in subsection (h).

¶ 31    We disagree with the special concurrence's contention that we have improperly addressed an issue the parties failed to brief. Rather, the parties in this case have briefed but not appropriately framed the issue. Specifically, the parties and the trial court construed subsection (h) to permit wage deduction proceedings to continue until the underlying judgment is satisfied, regardless of whether the 20-year time limitation for judgment revival has lapsed. On appeal, the parties assume this interpretation of subsection (h) is correct and fail to offer any

further analysis or support for their interpretation. However, as our extensive analysis of subsection (h) establishes, their interpretation of subsection (h) is a clear and obvious error in the trial court proceedings.

¶ 32   A reviewing court may, in its discretion, "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). A reviewing court does not lack authority to address unbriefed issues and may do so in the appropriate case, *i.e.*, when a clear and obvious error exists in the trial court proceedings. *People v. Givens*, 237 Ill. 2d 311, 325 (2010). Because the issue before this court was whether subsection (h) applied retroactively, we had to determine whether the legislature clearly indicated the temporal reach of the amended statute or whether applying the statute would have a retroactive impact. See *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 29. Thus, we had to construe the statutory language and could not skip over, as the parties did, the question of the meaning and effect of the language of subsection (h). Statutory construction of subsection (h) was a portion of the retroactivity analysis, and the special concurrence essentially concedes this point because it too attempts to construe the statute despite the parties' failure to do so. *Infra* ¶¶ 41-43. Furthermore, the issue of statutory construction is *de novo*, and it would not have been efficient, under the circumstances of this judgment collection case where litigation funds seem to be in short supply, to ask the parties to supplement their briefs to address a construction of subsection (h) that is contrary to their assumptions.

¶ 33   We also disagree with the special concurrence's assertion that there is no need to remand this matter. Remand to the trial court for the appropriate orders to enable Puccinelli to terminate the wage deduction proceedings is a more efficient use of judicial resources than having this court attempt to draft the specific and appropriate order informing the parties and nonparties of their obligations in this matter.

¶ 34                          III. CONCLUSION

¶ 35   Our construction of section 2-1602 renders moot the issue of the retroactive application of subsection (h) in the instant case because the 20-year time limit to revive this judgment has already run. Finally, we do not reach Puccinelli's equal protection claim, which is wholly dependent on the erroneous interpretation of section 2-1602(h) discussed *supra*.

¶ 36   We hold that the 20-year time limit for judgment revival provided in section 2-1602(a) applies to section 2-1602(h). Accordingly, we reverse the circuit court's decision denying Puccinelli's motion to terminate the wage deduction proceedings and declare the 1993 judgment against him lapsed. We remand this matter to the circuit court for further proceedings.

¶ 37   Reversed and remanded.

¶ 38   PRESIDING JUSTICE GORDON, concurring in part and dissenting in part.

¶ 39   As the majority correctly observes, "the parties' arguments address only [(1)] the retroactive application of the judgment revival statute and [(2)] equal protection." *Supra* ¶ 13. However, the majority reaches out, *sua sponte*, to decide an issue, which was never briefed by the parties and never addressed by the lower court. *Supra* ¶ 13. The majority does this, even

though the issue that *was briefed* by the parties and *was addressed* by the lower court will resolve the case before us. *People v. Givens*, 237 Ill. 2d 311, 325-30 (2010) (a reviewing court should generally refrain from *sua sponte* addressing unargued and unbriefed issues in order to reverse a trial court). As a result, I must respectfully concur only in the judgment to reverse and only for the reasons specified below.

¶ 40    The issue raised by the parties and addressed by the trial court was whether subsection (h) of section 2-1602 of the Code of Civil Procedure (Code) applies retroactively. 735 ILCS 5/2-1602(h) (West 2014). For the reasons explained below, I find that it does not.

¶ 41    With statutory interpretation, our primary objective is to give effect to the legislature's intent, and the best indication of that intent is the plain language of the statute itself. *Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 43. When interpreting a statute, we give the words their plain and ordinary meaning. *Maschek*, 2015 IL App (1st) 150520, ¶ 43 (citing *Brunton v. Kruger*, 2015 IL 117663, ¶ 24). If the statutory language is clear, we must apply it without resort to any aids of statutory construction. *Maschek*, 2015 IL App (1st) 150520, ¶ 44 (citing *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003)). If, and only if, the statutory language is ambiguous, may we look to other sources to ascertain the legislative intent. *Maschek*, 2015 IL App (1st) 150520, ¶ 44 (citing *Krohe*, 204 Ill. 2d at 395).

¶ 42    Subsection (h) was enacted in 2013 and took effect on January 1, 2014. It states in full:

"(h) If a judgment becomes dormant during the pendency of an enforcement proceeding against wages under Part 14 of this Article or under Article XII, the enforcement may continue to conclusion without revival of the underlying judgment so long as the enforcement is done under court supervision and includes a wage deduction order or turn over order and is against an employer, garnishee, other third party respondent." 735 ILCS 5/2-1602(h) (West 2014).

¶ 43    This section does not state, "If a judgment *became*." Rather, it states, "If a judgment *becomes*." (Emphasis added.) 735 ILCS 5/2-1602(h) (West 2014). The definition of "become" is "to *begin* to be or come to be something specified: to begin to have a specified quality." (Emphasis added.) Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/become (last visited Aug. 1, 2016). The definition of "if" is "in the event that." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/if (last visited Aug. 1, 2016). The dictionary explains that the word "if" is "used to talk about the result or effect of something *that may happen* or be true." (Emphasis added.) Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/if (last visited Aug. 1, 2016). Thus, the section applies prospectively to judgments, in the event that they begin to be dormant. See also *Doe A v. Diocese of Dallas*, 234 Ill. 2d 393, 405 (2009) ("prospectivity is the appropriate default rule").

¶ 44    In addition, the stated effective date of this section is January 1, 2014. Therefore, the newly added section, by the legislature's own terms, applies only after January 1, 2014.

¶ 45    In the case at bar, the trial court entered judgment in favor of plaintiff and against defendant on April 2, 1993. On August 24, 1999, the trial court entered a wage deduction order against defendant's employer. Wages were deducted and continue to be deducted.

¶ 46    On August 25, 2005, the trial court entered an order reviving the judgment. Illinois law provides that "no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section

- 9 -

2-1601." 735 ILCS 5/12-108(a) (West 2014).[1] Since there was no further revival—seven years later—on August 25, 2012, the judgment became dormant. Thus, it became dormant almost a year-and-a-half before subsection (h) took effect on January 1, 2014.

¶ 47 The law in effect on August 25, 2012, permitted plaintiff to seek to revive the judgment, but he did not. Subsection (a) of section 2-1602 provided then, as it provides today, that "[a] judgment may be revived by filing a petition to revive the judgment *** at any *** time within 20 years after its entry if the judgment became dormant." 735 ILCS 5/2-1602(a) (West 2012). Since the judgment was entered on April 2, 1993, this 20-year time period expired on April 3, 2013, which was almost a year before the new law took effect. *Supra* ¶ 33 (observing that the 20-year limit to revive the judgment had already run). Since the plain and ordinary meaning of the new subsection (h) shows that it does not apply retroactively, it had no effect on defendant's motion to declare the judgment lapsed, and the trial court must be reversed.

¶ 48 Defendant moved on November 10, 2014, to declare the judgment lapsed and to terminate wage deduction proceedings. The trial court denied this motion on February 27, 2015. For the reasons stated above, and these reasons alone, I respectfully concur in the judgment to reverse the trial court's February 27, 2015, order.

¶ 49 However, I do not see a need to remand to the trial court for further proceedings, since we may declare the judgment lapsed and order the wage deduction proceedings terminated. Illinois Supreme Court Rule 366 provides, in relevant part, that "[i]n all appeals, the reviewing court may, in its discretion, and on such terms as it deems just *** (5) enter any judgment and make any order that ought to have been given or made." Ill. S. Ct. R. 366 (eff. Feb. 1, 1994). Thus, I concur in the judgment to reverse, but I would not remand for further proceedings.

---

[1]Although I cite the 2014 version of the Code, I observe that it has been in effect since July 1, 1997, which is well before the seven-year period at issue in this case expired.